[PHILADELPHIA, MAY 1ST, 1841.]

# THE FRANKLIN FIRE INSURANCE CO. *against* FINDLAY.

### IN ERROR.

1. Under the act of 1806, an amendment may be made of a declaration on a trial, even after counsel have summed up.

2. Where the goods of an assured were levied upon by the sheriff by virtue of an execution against him; and the sheriff took actual possession of the goods, and left them in the store of the assured, the doors of which he fastened, and the windows of which he nailed up; and the sheriff went out of town and took the key of the store with him; · and during his absence a fire took place, which destroyed the store with its contents : it was *held*, that the assured was nevertheless entitled to recover.

ERROR to the District Court for the City and County of Philadelphia.

This was an action of covenant brought by Hugh Findlay, to the use of Andrew B. Spence, his assignee, against the Franklin Fire Insurance Company of Philadelphia, on a policy of insurance dated the 31st day of January, 1831, whereby the defendants insured " merchandise such as is usually kept in a country store, contained in two two-story frame stores and warehouses, designated as Nos. 1 and 10, in a. plot on file in the office, situate on the east and west side of Main street in the town of South Florence, Alabama." " On each building $4000." By a memorandum written in the margin, and dated April 11th, 1831, it was agreed, that after the date, the insurance should apply to the building No. 1, in the plot, agreeably to a letter of that date.

The declaration set forth the policy in the usual manner, and then proceeded : " and the said Hugh Findlay in fact saith and doth aver,

that afterwards, to wit, on the twenty-eighth day of September, in the year one thousand eight hundred and thirty-one, at South Florence, in the state of Alabama, to wit, at the city and county aforesaid, while the said policy of insurance was in full force, the said merchandise in the said policy of insurance described, contained in the said building, No. 1, was of great value, to wit, of the value of all the sum insured thereon as aforesaid, and was then and there injured and wholly destroyed by fire ; whereof notice and due proof afterwards, to wit, on the twenty-fifth day of October, one thousand eight hundred and thirty-one, and on the fourteenth day of November, in the same year, were given by the said Hugh Findlay to the said The Franklin Fire Insurance Company ; and the said The Franklin Fire Insurance Company did then and there become liable, to wit, at the county aforesaid, to pay to the said Hugh Findlay the said sum of money, unless the said company should, within thirty days thereafter, make good the said damage, by paying therefor, according to an estimate to be made thereof by arbitrators, to be indifferently chosen ; and the said Hugh did then and there require them to pay him the said sum of eight thousand dollars, so by him insured as aforesaid, unless they would make good the loss and damage in manner aforesaid, according to the form and effect of the said deed, and of the covenant in that behalf, so made as aforesaid : yet the said plaintiff in fact saith, that the said The Franklin Fire Insurance Company, have not paid to him the sum of eight thousand dollars, or any part thereof, nor made good the damage and loss in manner aforesaid, contrary to the form and effect of the said deed, and of their covenant so made by them in that behalf as aforesaid. And so the said plaintiff in fact saith, that the said The Franklin Fire Insurance Company, although often thereto requested, have not kept with and performed to him their aforesaid covenant, but have broken the same, and to perform the same have altogether refused, and still do refuse, to the damage of the said plaintiff sixteen thousand dollars, lawful money of the United States ; and therefore he brings suit, &c."

The defendants pleaded " covenants performed, with leave to give the special matter in evidence, and to add, alter, &c."

On the trial before PETTIT, President, on the 10th of January, 1839, the plaintiff gave in evidence the policy of insurance upon which the action was brought ; the execution of which was admitted.

In the body of the policy was the following proviso : " Provided, That if the premises above mentioned shall, at any time when such fire shall happen, be, in whole or in part, occupied for purposes considered hazardous in the printed proposals and conditions hereunto annexed, unless liberty so to occupy them be expressly stipulated for in the manner prescribed in the note to article XIII., this policy and

every clause, article and thing herein contained, shall be void and of no effect. Nor shall this policy have any force or effect, if assigned, unless such assignment be made within thirty days after the transfer of the property, and allowed by the company agreeably to article XI. of the proposals annexed."

Among the "Conditions of Insurance" annexed to the policy, were the following:

" I. Persons desirous of making insurance on buildings, are to furnish the secretary of the company with the following information.

1. Of what materials the walls and roof of each building are constructed, as well as the construction of the buildings contiguous thereto.
2. Whether the same are occupied as private dwellings, or how otherwise.
3. Where situate.

Each building must be separately insured; and in like manner a separate sum insured on the property contained therein.

In the insurance of goods, wares, or merchandise, the building or place in which the same are deposited is to be described; also, whether such goods are of the kind denominated hazardous, and whether any manufactory is carried on in the premises. And if any person shall insure his or their building or goods, and shall cause the same to be described in the policy otherwise than as they really are, so as the same be charged at a lower premium than is herein proposed, such insurance shall be of no force.

II. Goods held in trust or on commission are to be insured as such, which may be done by inserting the words "for account of whom it may concern," otherwise the policy will not cover such property."

" XI. The policy may always be transferred; provided, such transfer be endorsed upon the policy and brought to the office for approval within thirty days from the date thereof: otherwise the premium shall be considered as sunk for the benefit of the assurers.

XII. In case of sale of the property insured, or cessation of the risk, a return of the premium will be made, if applied for within thirty days after such event, but not otherwise—subject to a deduction of five per cent.: but no return of premium will be made for a less term than one year."

On the back of the policy was the following assignment, executed under seal by H. Findlay:

" For value received, I hereby transfer, assign, and set over unto Andrew B. Spence and his assigns, all the right, title, and interest in this policy of insurance, and all benefit and advantage to be derived therefrom. Witness my hand and seal this 7th day of

October, 1831, for the purposes expressed in a deed to the said Andrew B. Spence, of even date hereof."

The plaintiff's counsel then gave in evidence certain depositions taken in Philadelphia; *the material parts of which were as follow* :

Robert King testified, that " The fire commenced sometime between midnight and daylight, the precise hour he cannot specify. A young man who was sleeping in the store with deponent, awoke him at the alarm of fire, and deponent instantly got up and went out; the fire then in Mr. Findlay's house was blazing up about three or four feet above the roof; there was a fire *in another* part of the town at the same time; but deponent did not go to it. Every exertion was used by Mr. Findlay and the citizens of Alabama generally to extinguish the fire, but without success; nor would any exertion, as deponent thinks, have availed, as the fire had full possession of the roof of the building. The goods generally in that store were such as are always kept in a country store—a pretty general assortment; the house and store of Mr. Findlay were entirely destroyed by that fire. Deponent thinks that little or nothing was rescued; perhaps a bed or two; some bagging partly burnt, but nothing of any value. Deponent has no knowledge of the cause or origin of the fire, nor had he any reason to suppose it had been set on fire. Deponent believed at the time, and believes now, that the fire was accidental; and knows that the loss, in consequence of the fire, of the stock of goods in Mr. Findlay's store was total and entire, but has no knowledge of the quantity or value of the goods then in it, except that the store appeared to be full, as usual, a day or two before." Cross-examined.—" It was a wooden building, I think two stories high. Shingle roof. The fire first appeared about the middle of the roof. I went over immediately. Did not go into the house. The doors were all closed that I saw. There was a door to the store, and a door to the commission-house apartment— all in the same house. I do not know whether the fire was burning in the lower part of the house while it was burning above. The door from the street into the store was not opened while I was there. I saw Mr. Findlay about fifteen minutes after the alarm of fire. He was in the street between his house and ours. He was assisting to save our house. He was dressed, I think. There was a frost that night. He lived up stairs altogether. I did not see Mr. Findlay attempt to remove any goods from the store during the fire. The store was locked. The sheriff had the key. I think there was no communication with the house from the store, except what was locked. The sheriff took possession a day or two before the fire, perhaps longer. He did not remove any of the goods I think. I don't think he left any one in charge of the goods. I think he locked the house up and took the key with him. There was no fire engine in the town."

(The Franklin Fire Ins. Co. v. Findlay.)

William E. Walker testified—" That about one o'clock in the morning of the twenty-eighth of September, 1831, he was aroused by the cry of fire, which he at once discovered to proceed from the house which Mr. Hugh Findlay occupied as a shop, store and dwelling. The said building, as well as the adjoining one, occupied by Mr. Briscoe as a dwelling, and another house, not far distant, in possession of Messrs. J. C. McClay & Co., having in store salt, were on fire. It was evident that the fire was caused by an incendiary, as the two could not, when he first discovered them, have communicated fire to the one, nor the one to the two, as deponent thinks. Mr. Hugh Findlay and family, together with most of the citizens of South Florence, made great exertions to extinguish the fire, but only succeeded in extinguishing it in the salt house of Messrs. J. C. M'Clay & Co. There was no want of exertion in any person from fear of combustible matter. The building of Mr. Findlay was situate on the right hand, or west side of Main street, as you go from the river. The building and its contents, with the exception of a very few things that were saved, were entirely consumed."

The plaintiff's counsel then gave in evidence certain depositions taken under a commission issued at the instance of the defendants, to South Florence, (Alabama,) upon interrogatories; of which it is material only to state the following:

Hugh Pettit, sheriff of Franklin county, (Alabama,) in answer to the eighth interrogatory, testified as follows:—" The pecuniary circumstances of the said Hugh Findlay were in an embarrassed condition. At the August term of the Circuit Court for the county of Franklin, the following judgments were rendered against him, to wit, Knox, Boggs & Co., v. him, for seventeen hundred and eighty-nine dollars fifty-eight and one-fourth cents; one in favour of John Simpson, endorsee, &c., v. same, for nineteen hundred and ninety-one dollars twenty-two and one-fourth cents; one in favour of Chapron & Nidelet v. same, for sixteen hundred and sixty-two dollars and six and one-fourth cents; one in favour of Buchanan & Sproule v. same, for eighty-three dollars forty-two and three-fourth cents; one in favour of John D. Kemp v. same, for seventy-nine dollars and eighty-nine and one-fourth cents: there was also another judgment v. same, in the County Court of the said county of Franklin, obtained at the June term of said court, in the year 1831, for from one thousand to twelve hundred dollars, the precise amount of which I have not now present the means of ascertaining. Said last mentioned judgment was in favour of John Brand. I know nothing about his being indebted to other persons either in or out of the state of Alabama."

To the ninth interrogatory on the part of the defendants, he deposes as follows:—" Executions were issued on all the judgments mentioned in my answer to the eighth interrogatory. The one in

(The Franklin Fire Ins. Co. *v.* Findlay.)

favour of John Brand, was issued to the former sheriff of Franklin county; the residue were issued and directed to·myself as the then sheriff of said county of Franklin, by virtue of which I levied on the goods mentioned in the afore-named inventory, as well as the lots, and house that contained the said goods, as also the household and kitchen furniture and other property of said Hugh Findlay; all of which, with the exception of the lots and house, are mentioned in the aforesaid inventory. The property not belonging to the store, but contained in said inventory, consisting of household and kitchen furniture, and other moveables, will be ascertained by reference to said inventory, commencing where one horse and gig are mentioned, and ending with the conclusion of said inventory. No valuation of said goods was made at the time. The said inventory was taken at the time of the levy by myself, in conjunction with the said Hugh Findlay and one William Johnson, the clerk of the said Hugh Findlay. Said inventory is just and correct. After the levy was made, which was on the 17th day of September, 1831, the inventory was taken. The windows were nailed down, the shutters close and secured; the inner doors to the room containing the goods were fastened and nailed up; and the outer door thereof was closed and locked, and the key taken into my possession. By which said Hugh Findlay was deprived of all custody and control of, and debarred from access to said goods. The said goods were burned on the night previous to the day appointed for the sale of them, which was in ten or twelve days after the levy."

To the eleventh interrogatory on the part of the defendants, he deposed as follows:—" I am acquainted with the building in which the fire took place. It was a two-story framed building. The materials of which it was erected were principally of pine and oak. I think the shingles were of cypress. There was another building adjoining, occupied as a tavern-house, built of logs, and weather-boarded with pine planks; also a kitchen ten or twelve feet in the rear, built of brick. The building stood north and south, with a partition east and west, near the centre of the building. The south end was occupied as the store and counting-rooms, that is on the ground floor. The north half, on the ground floor, was occupied as a warehouse, with the north-east corner partitioned off, say ten or twelve feet square, and occupied as a post-office. On the second story over the store was a lumber room. The balance of the upper story was occupied as the private dwelling of the said Hugh Findlay."

To the twelfth interrogatory on the part of the defendant, he deposed as follows:—" There was a fire-place in the counting-room, which was immediately back of the store-room, and fire was commonly used there in cool weather. There was a fire-place in the ware-room, but I never saw it used. There were fire-places in both rooms up-stairs; that in the dwelling room was used when the wea-

(The Franklin Fire Ins. Co. v. Findlay.)

ther required it.   A fire in the kitchen in the rear was used at all seasons of the year for cooking."

To the fifth interrogatory on the part of the plaintiff, he testified as follows:—" He (this deponent) arrived in South Florence about nine o'clock on the morning after the goods were consumed.   He ascertained on his arrival, that nothing was saved of furniture, except one bed, two pair of brass andirons, and several drawers belonging to a bureau, with some articles of clothing in them.   The said family of Findlay then consisted of said Findlay himself, his wife and a clerk.   The clerk generally slept in the counting-room, and Findlay and his wife in the second floor, immediately above the counting-room."

Annexed to the deposition was an inventory of the contents of the store, taken by the sheriff before the fire, with a valuation made by a witness, who testified in respect to it as follows:—" I have, in conjunction with Mr. Henry A. Bragg, a merchant of this place, valued an invoice or inventory of merchandise submitted to us, and hereto annexed, marked (A), and have examined and valued each and every article therein contained, according to the best of our judgment of the value of such goods, as purchased by us, in the eastern cities, about that time, and extended and footed the said inventory on a separate and distinct piece of paper, and find the value of said goods to amount to twenty-eight hundred and ninety dollars and seventy-five cents, estimating them at their net first cost in said cities, and adding thereto this sum, two hundred eighty-nine dollars and seven cents, being ten per cent. for costs attending the purchase and transportation of said goods to South Florence, Alabama, which together makes the gross sum of thirty-one hundred seventy-nine dollars and eighty-two cents."

Evidence was also given respecting the positive and relative value and cost of goods in Alabama and Philadelphia, &c., which it is not necessary to repeat here.

After the evidence was closed, and after the junior counsel for the plaintiff and for the defendant had addressed the jury, the counsel for the plaintiff offered to amend the declaration, by inserting an averment of interest in the plaintiff as follows:

" The said plaintiff was then and there, at the time of making the policy, and from thence continually afterwards until and at the time of the loss hereafter mentioned, interested in said goods in the said policy of insurance mentioned, to a large value and amount, to wit, to the value and amount of all moneys by him ever insured or caused to be insured thereon as aforesaid, viz., at the city and county aforesaid," &c.

(The Franklin Fire Ins. Co. *v.* Findlay.)

The counsel for the defendant objected to the amendment being received; but it was admitted by the judge.

The learned judge charged the jury as follows:—

"This is an action of covenant brought by Hugh Findlay, late of South Florence, Alabama, to the use of A. B. Spence his assignee, against the Franklin Fire Insurance Co. of Philadelphia, on a policy dated 31st of Jan., 1831, for $8000, on 'merchandise, such as is usually kept in a country store,' in the plaintiff's store, in South Florence. The contract is in the nature. of a contract of indemnity given by the insurers against such loss by fire as may happen to the insured in respect to the goods covered by the policy. The fire occurred on the 28th September, 1831, and a large quantity of goods in the plaintiff's store were destroyed. The facts in the case are not complicated and not disputed. A fire took place, without any blame being attributed to, or fault of the insured. It may be asserted generally, that all the goods were destroyed: a suggestion has been made to the contrary, in the argument, arising from the nature of some of the articles, but the witnesses speak of entire loss; and it seems that no fragments of any value were saved. If there was, or by diligence of the insured, ought to have been, any salvage of any part of the goods, the jury will make a deduction accordingly. There is no dispute as to the conduct of the insured at the time of the fire, nor in regard to the preliminary proofs required by the policy. The Insurance Company have, however, made defence upon grounds which present some interesting questions of law. No censure has been imputed to the company for the defence—none ought to be;—a fair question of law in regard to the interest of the insured is presented, and a question as to the mode of estimating the loss, if the company be liable at all, is also fairly presented. The difficulty in the way of recovery does not spring out of the conduct of the defendant, but grows out of the misfortunes of the insured. The main question of law made by the defendant, goes to the whole of the plaintiff's case, and is extracted from the matters given in evidence in the cause. It seems that the insured was much embarrassed in his circumstances at the time of the fire; and that there were various judgments against him; and that a few days before the night of the fire, the sheriff of Franklin county made a levy by virtue of sundry executions in his hands against the plaintiff, upon the identical stock of goods covered by the policy. The sheriff made an inventory; caused the windows of the store to be nailed down, and the shutters closed and secured: the inner doors to the rooms containing the goods, were fastened and nailed up, and the outer door closed, locked, and the key taken into the possession of the sheriff: 'by which' the sheriff testifies, 'the said Hugh Findlay was deprived of all custody and control of, and prevented of all access to, the said goods.' The goods were burned on the night before the

day fixed for the sale. Upon these facts, the defendant objected that Mr. Findlay's interest in the goods was divested, and the risk of the defendants ceased from the time of the levy and possession by the sheriff. This is an interesting question. The plaintiff has thrown out a doubt that the levy and possession of the sheriff were not complete in point of fact; and if there be such a doubt, it is for the jury to decide, else the question of law cannot arise; but it is to be remarked that the sheriff is positive in his testimony, and it is without contradiction. He says that he took charge, and deprived the plaintiff of all custody or control of, or access to, the goods. The question is, to my mind, clearly presented, how far a levy upon, and taking charge of, goods by a sheriff, by virtue of an execution against the insured, affects the right of the insured to recover for a loss by fire happening after such levy, and before a sheriff's sale? That the sheriff has a special property, for certain purposes, is clear; he may maintain trover or trespass for the goods against a wrong doer, because he is answerable to the plaintiff in the execution for them. This, however, is not enough to sustain the defendants; it may be conceded, and yet the insured retain certain rights also: he may pay the debt and resume possession. That the right of a defendant in an execution to the goods levied upon, is not entirely divested before actual sale, is manifest from the familiar case of a reversal of the judgment: if reversed before sale, the goods are restored, and he holds as by his original title; if reversed after sale, he obtains restitution of the money, the goods having passed to the sheriff's vendee. Again, if the mere levy divests the whole interest of a defendant, who is insured—a levy for $1000 on goods worth $10,000 may do manifest injustice. Again, it is conceded all round, that in case of loss by fire after levy and before sale, the plaintiff's debt is not extinguished nor decreased; nor is the sheriff the sufferer, unless he be in actual default. If, then, the insured is to be held deprived of his goods, and his insurance, and his debt not extinguished, the Insurance Company is the only gainer: the debt remains, the goods are destroyed, and the insurance is lost. The cessation of risk alluded to in the policy may well apply to many cases, such as retiring from business, removing to another store, &c. Before establishing such a principle, great caution must be exercised. Whether a sheriff after levy can insure, or whether execution creditors can insure, are not material questions in this suit. Admitting that they may insure, yet they are not bound to do so. The sheriff loses nothing by omitting to do so, excepting his commissions in case there are no other goods: the execution creditor loses nothing by way of extinguishment of his debt; that remains, and he only suffers in case no other property can be found. But certainly neither sheriff nor execution creditor is bound to insure. On the other hand, it is said, that if the insurance continues after levy, it ought to be for the creditors. Perhaps it ought, but should not the

(The Franklin Fire Ins. Co. *v.* Findlay.)

contract be made so? The creditor, however, does not lose his debt by the fire; the debt continues unaffected; and I know of no mode by which creditors can reach the Insurance Companies, except by making an indebtedness to the party insured, and then using some process of attachment. No mode, however, has been suggested by counsel. As the sheriff cannot avail himself of the policy, nor the creditor, the underwriter must go clear, unless the defendant in the execution has the right to recover. And as he remains liable to his creditor on the judgment, there is little hardship in this; certainly none to the company, as they are made to pay but once; nor to the creditor, if his debtor be put in possession of funds: at least his chance of payment is more improved than if his debtor suffered a total loss of both goods and insurance. If the court in which suit is brought had power to impound the money recovered, and pay it to the execution creditor, all difficulty would be obviated; but the court has no such power, and we cannot escape from the difficulty in that way. Many other observations might be made, and I have thrown out these to show that the point is a fruitful one, and requires grave consideration. For the present, yielding to the actual inclination of my judgment, (but reserving the point for a future mature consideration,) and to enable the jury to decide on the merits of the cause, I hold that the levy, and subsequent acts of the sheriff, do not present a defence in law, in this case. The second question raised relates to the alleged increase of risk. It is contended by the defendants, that the change of possession and all the circumstances of the levy, and the conduct of the sheriff so increased the risk, as to vitiate the policy. The contract must be construed in reference *to mutual* good faith between the parties to it. If a levy, and possession by a sheriff, are not *per se* enough to vitiate it, and I have ruled that they are not, the defendants must be presumed to have contemplated such an event as an incident of property; in other words, an underwriter engages to encounter the ordinary incidents to which property is legally liable. On the other hand, the insured is bound in good faith to see that no act of his or by his procurement, shall involve the property in risks not usually and legally incident to it. If the conduct of the sheriff is so plainly unusual and irregular, as to endanger the property, and increase the risk beyond the ordinary effect of a levy, the underwriter can make it matter of defence. Here, however, the plaintiff alleges, first, that there was nothing improper in the acts of the sheriff; that every thing was done by him that ought to have been done; and that during the custody of the law, the property was really safer from fire than before; and secondly, that the fire was altogether independent of the circumstances of the levy. You will apply the legal principle I have stated to the facts in proof. If, then, you think there was not such an increase of risk in fact as to vitiate the policy, the concluding question is presented, as to estimating the loss. The contract is one of indemnity; it is that fully and fairly;

and to be so interpreted for both parties; it is no more; it is no less. The language of the policy is, that the insured ' shall, within thirty days after certain proofs made, furnish the insured with a like quantity of any or all of the said goods, and of the same quality, or make good the damage or loss by paying therefor.' The contract refers to thirty days after proofs furnished; here, to thirty days after October 28, 1831 : and it also clearly has reference to the place in which the goods were lost. And as, in this case, the company did not furnish the insured with a like stock, the only rule to be observed is, to ascertain what sum of money would, if paid to the insured at Florence, Alabama, within thirty days from October 28, 1831, have been' equivalent to the damage or loss sustained; or what sum of money would have enabled him to have purchased a similar stock and thus reinstated himself. All notions of prospective profits to be earned in a ·year or two, by skill, labour and time, are excluded and inadmissible : they might have been the subject of insurance, but by a different form of contract. The next estimate furnished by the plaintiff is the amount of the inventory of the plaintiff, and an appraisement made since the fire, predicated on the cost at Philadelphia, with 10 per cent. carriage, and interest thereon. A third mode of estimating the loss is founded on the testimony of Mr. Lindsay, and insisted on by the plaintiff, viz., a new stock, selected at Philadelphia, would sell at Florence for cost, carriage and sixteen and two-thirds per cent. advance on credit, allowing five per cent. to cover bad debts. This is what such a stock would bring; but still leaves the question unaffected, what could the plaintiff buy for ? The same intelligent witness says, that at Nashville, the plaintiff could have replaced his stock at cost, carriage, and sixteen and two-thirds per cent. on Philadelphia prices ; meaning at four to sixth months credit at Nashville, and that two or three per cent. would come off for cash. As to the sheriff's sale, the witness did not think the stock would have brought first cost in September, 1831—money being then very scarce. The same if no market existed at Florence to buy such a stock, then the market to which resort is usually had, may be taken into view by the jury, to enable them to make an estimate ; in this way alone, does Nashville, Philadelphia, or any place than South Florence become of importance. The jury will exclude the demand of the plaintiff for the $80, premium; it is what he paid to enable him to hold the defendants liable—the consideration of the contract; and surely if he recovers for a loss, that consideration belongs to the defendant. The question of interest alone remains to be settled. It must be six per cent. and no more ; the contract was made here, and the plaintiff must have contemplated our laws at the time, so far as interest was concerned. If the contract had been made in Alabama, another rule might prevail ; a higher rate of interest being there allowed."

The judge added, that he reserved all the points of law for the consideration of the whole court.

The jury found for the plaintiff $3685 92; and the District Court ordered judgment to be entered on the verdict.

A writ of error was then taken, and the following specifications of error were filed:

" 1. That the judge permitted the plaintiff to amend his declaration, by adding an averment of his interest in the goods destroyed by fire, after the evidence was closed and after one of the counsel for the defendant had summed up.

2. That the judge charged the jury that the levy upon the goods of the plaintiff, and the possession thereof by the sheriff at the time of the fire, did not in law amount to such a change in the property in the goods as to annul the policy.

3. That the judge charged the jury that the said levy and possession did not constitute a sufficient defence to the claim of the plaintiff.

4. That the judge charged the jury, that to increase the risk so as to discharge the liability of the defendants, the conduct of the sheriff must have been unusual and extraordinary.

5. Because the attention of the jury was withdrawn from the merits of the case, and directed to a wrong point and one not made on either side in argument, by raising the question of the conduct of the sheriff—whether extraordinary or otherwise.

6. Because the levy and proceedings under the sheriff's levy varied the risk from that which the parties contemplated at the time of the insurance, and thus prevented a continuance of the liability of the defendants; and that point should have been so decided by the court.

7. That the court, if it did not decide that the facts given in evidence, prevented a continuance of the risk assured, should at least have submitted that circumstance for the decision of the jury.

8. That the judge erred in treating a sheriff's levy, when conducted in the usual manner, as an incident to ownership which might be regarded as contemplated by an underwriter in effecting insurance."

Mr. *T. I. Wharton,* for the plaintiff in error.

1. The amendment of the declaration ought not to have been

admitted. It was too late after the counsel had spoken. If the words of the act " on the trial" are supposed to allow it, an amendment ought to be admitted after the charge, and at any time before the verdict is given.

2. The exceptions to the charge raise a question which is believed not to have been decided, viz., the effect upon the contract of insurance, of a levy by a sheriff, accompanied with an actual change of the possession and custody of the goods. We contend that there was such a change of the property in the goods, as to avoid the contract. Insurance is a personal contract entered into on the faith of the insured continuing the owner, and having an interest to preserve the goods ; and does not follow the goods into other hands. *Lynch* v. *Dalzell*, (4 *Br. P. C.* 431.) *Sadlers Co.* v. *Badcock*, (2 *Atk.* 554.) *Carroll* v. *Boston Ins. Co.* (8 *Mass. Rep.* 515.) Then the authorities show, that by the levy and other proceedings, the property was changed. *Watson on Sheriff*, 175, and the cases there cited. *Rorke* v. *Dayrell*, (4 *Term Rep.* 402.) *Payne* v. *Drew*, (4 *East*, 522.) *Fontaine* v. *Phœnix Ins. Co.* (11 *Johns.* 293.) It will be said that the sheriff has only a special or qualified property in the goods ; but the answer is, that such a change of property alters the contract ; as it makes the property, if any remains in the insured, different from what it was. The provision for " assigns" in the policy, does not extend to the sheriff. *Platt on Covenants*, 525. At all events, there was a change of possession which increased the risk. It is like a deviation in marine insurances, which is said to comprehend " every act of the assured or his agents which without necessity or just cause increases or changes the risks included in the policy." 1 *Phillips on Ins.* 179, 181. The difference between the possession of goods by the owner and a stranger is very material. The evidence shows that here was an actual increase of the risk by the conduct of the sheriff, who nailed up the windows and went out of town with the key. If he had removed the goods, there would certainly have been an end of the contract. How does it alter the case, that they were impounded on the premises ? *Roget* v. *Thurston*, (2 *Johns. Cases*, 248.) Besides, if any one is entitled to recover for the loss of these goods, it is the sheriff, for the benefit of the execution creditors. The title of Findlay was at least suspended, until he paid the execution creditors.

Mr. *Meredith* and Mr. *Williams*, for the defendant in error.

[On the subject of the amendment of the declaration the court declined hearing the counsel.]

There is but one question then in the case, viz., whether there was such a change of property here as avoided the insurance? There is nothing in the policy to show that Findlay was to remain in possession. The goods were to be in a country store. It does not follow that the store was to be occupied or kept open all the time. Suppose

that Findlay had had three or four stores, as sometimes happens, his personal care and superintendence of all could not have been expected. The provision as to trustees is inapplicable from its terms. In this case the jury have found that there was no increase of risk. The ordinary proceeding on a levy here, is to impound the goods on the premises, and to put a man in charge. Certainly there is no increased risk in merely shutting up the store; and fastening it had the effect of keeping out incendiaries, without preventing the ingress of persons disposed to extinguish an accidental fire. The property was not divested out of the defendant in the execution, by the seizure. *Watson on Sheriff*, 190. *Wilbraham* v. *Shaw*, (2 *Williams's Saund.* 47.) *Yelverton*, 44. *Dyer*, 99 a, 67, b. 1 *Brownlow*, 41. *Waller* v. *Tweedale*, (*Noy's Rep.* 107.) *Lefans* v. *Moregreen*, (1 *Keble*, 655.) 2 *Eq. Cas. Abr.* 380, pl. 14. *Davis* v. *Richmond*, (14 *Mass. Rep.* 475.) *Thurston* v. *Mills*, (16 *East*, 254, 274, 278.) *Blake* v. *Shaw*, (7 *Mass. Rep.* 506.) *Ludden* v. *Leavitt*, (9 *Mass. Rep.* 105.) The authorities show that there must be an insurable interest; but there is no case which proves that the goods must remain under a particular superintendence. Upon the argument on the other side, what would be the situation of the owner of a house who changes his tenant? In the case of a mortgagor it has been held that he is entitled to recover. In 3 *Bos. & Pul.* 75; S. C. 5 *Bos. & Pul.* 268, is the case of a ship in the possession of captors. *Rider* v. *Ocean Ins. Co.* (20 *Pickering*, 259.) *Col. Ins. Co.* v. *Lawrence*, (2 *Peters*, 25.) *Stetson* v. *Mass. Fire Ins. Co.* (4 *Mass. Rep.* 330.) *Gordon* v. *Mass. Fire Ins. Co.* (2 *Pick.* 249.) *Strong* v. *Manufacturing Ins. Co.* (10 *Pick.* 40.) *Jennings* v. *Penn. Ins. Co.* (4 *Binn.* 251.) *Reed* v. *Cole*, (3 *Burr.* 1512.) *Wells* v. *Philada. Ins. Co.* (9 *Serg. & R.* 103.) *Smith* v. *Maplenack*, (1 *Term Rep.* 445.) *Lock* v. *N. A. Ins. Co.* (13 *Mass. Rep.* 61.) *Brick* v. *Chesapeake Ins. Co.* (1 *Peters*, 151.) *Russell* v. *Union Ins. Co.* (4 *Dall.* 421; S. C. 1 *Wash. C. C. Rep.* 409.) *Carruthers* v. *Sheddon*, (6 *Taunt.* 14; 1 *Eng. Com. Law Rep.* 293.) *Ocean Ins. Co.* v. *Polleys*, (13 *Peters*, 157.) 1 *Sumner*, 434. A sale on execution is not a forfeiture. 1 *Phillips on Ins.* 419. *Lane* v. *Ins. Co.* (3 *Fairfield*, 44.) *Graves* v. *Boston Ins. Co.* (2 *Cranch*, 419.) *Lawrence* v. *Sebor*, (2 *Caines*, 203.) *Green* v. *Reynolds*, (2 *Johns. Rep.* 209.) *Lawrence* v. *Vanhorn*, (1 *Caines*, 276.) *Toppan* v. *Atkinson*, (2 *Mass. Rep.* 365.) *Murray* v. *Col. Ins. Co.* (11 *Johns.* 302.) *Oliver* v. *Green*, (3 *Mass. R.* 133.) *Williams* v. *Smith*, (2 *Caines*, 19.) *Fairclaim* v. *Shamtitle*, (3 *Burr.* 1300.) *Frieslander* v. *Ins. Co.* (1 *Moo. & R.* 171.) *Hibbart* v. *Carter*, (1 *Term Rep.* 745.) A subsequent alteration in the nature of the interest does not affect the policy. *Etna Ins. Co.* v. *Tyler*, (16 *Wend.* 397.) Here Findlay had a right to redeem, and had therefore an insurable interest; and if the case of *Curry* v. *Commonwealth Ins. Co.* (10 *Pick* 542,) be law, he was not bound to give notice. *Roberts* v. *Tradesmen's Ins. Co.* (17 *Wend.*) *Ellis on Insurance*, 38.

Mr. *J. R. Ingersoll*, in reply.

This is not a question of insurable interest; but of a change of interest and risk produced by extrinsic circumstances. The description of the risk in the policy would not sustain the right to recover if the seizure had actually taken place at the date of the policy. The interest of the assured to preserve and protect the goods, is an essential element in the contract. Here the interest of the assured was that the goods should be destroyed. Wager policies are not lawful in Pennsylvania. This was not a country store at the time of the fire, but a sheriff's lock-up-house. The underwriters had a right to calculate upon an ebb, as well as flow, of the goods. They were not to be fastened up. The execution was not altogether *in invitum*, if judgment was confessed. It was necessary to aver interest in the assured. *Hughes on Ins.* 20, 21. *Hammond on Ins.* 113. Generally, where there is access to goods, some are saved. Here there was not·salvage to the value of a farthing. A man may insure goods under execution, but he must so describe them. In *Lane v. Ins. Co.* (3 *Fairfield*, 48,) a *levy* is spoken of as defeating an insurance. *Berry v. Smith*, (3 *Wash. C. C. Rep.* 60.) *Doe v. Lanning*, (4 *Campbell*, 76.) The risk was necessarily increased here. The learned judge of the District Court left nothing to the jury but the question of extraordinary risk. A proper use of the goods by the sheriff was improper as respects the insurers; and if there is any difference in the kind of risk, the insurers have a right to judge for themselves whether they will continue liable.

The opinion of the court was delivered by

KENNEDY, J.—The first error assigned, which is an exception to the opinion of the court below, in permitting the plaintiff to amend his declaration, cannot be sustained. By the act of 21st of March, 1806, it is made the imperative duty of the court, either *on* or before the trial of the cause, to permit the plaintiff to amend any informality in his declaration, or the defendant any informality in his plea, which may affect the merits of the case. The only objection made to the court's allowing the amendment to be made here is, that it was too late. But, according to the express terms of the act, it cannot be said to be too late, if it be done at any time *on* the trial; that is, before the *close* of it. The amendment then, as it appears, having been permitted while the counsel were engaged in arguing the cause before the court and jury, was certainly made *on* the trial of the cause, and therefore within the time allowed by the act.

The remaining errors present but one question; and that is, whether the mere seizure of the goods by the sheriff under the execution in his hands against the assured, and closing of the window shutters and locking of the doors of the house in which they were found, and were to be kept according to the terms of the policy of

insurance, without any change of their situation or removal of them thence being made whatever, is sufficient to discharge the underwriters ?

That the policy was good, and covered the goods up to the time of their seizure by the sheriff, is not denied ; but it is argued, that as the policy of insurance operates only in favour of the assured personally, and not on the goods, so as to accompany a transfer of the right of property in them, and as the assured must have the same interest or right in them at the time of the loss that he had at the time of obtaining the policy, the seizure of them by the sheriff, which, as it is alleged, divested the assured of the right of property in the goods as well as of the right of possession to them, released the underwriters from all obligation arising out of the policy. That the policy is not assignable, so as to follow or accompany a transfer of the right or interest, which the assured had in the goods at the time it was subscribed, may be admitted ; but it cannot be admitted that the assured must have, at the time of the loss, the same interest in the goods that he had at the time of procuring the policy, in order to entitle him to claim for a loss actually sustained by a peril insured against. The legal adjudications on this point show the rule to be otherwise, and that he may recover on the policy for the loss of a diminished interest. *Stetson* v. *Mass. Mutual Ins. Co.* (4 *Mass.* 330.) *Gordon* v. *Mass. Mutual Ins. Co.* (2 *Pick.* 249.) *Reed* v. *Cole,* (3 *Burr.* 1512.) *Strong* v. *Man. Ins. Co.* (10 *Pick.* 40.)

Neither can it be admitted that the seizure of the goods in this case divested the assured of his whole and entire interest and right in the goods. He still retained the general right of property in them, notwithstanding the seizure by the sheriff. The most that the sheriff acquired thereby, was the possession, and a special or qualified right of property. *Wilbraham* v. *Snow,* (2 *Saund.* 47 ; S. C. 1 *Sid.* 438.) 1 *Ventr.* 52. 1 *Lev.* 282. 1 *Mod.* 30. *Clerk* v. *Withers,* 6 *Mod.* 290. The right of the sheriff by virtue of the seizure is defeasible ; and hence, I take it, that it is his duty to release and give up the goods to the defendant in the execution, upon a tender of the debt and damages, or damages, as the case may be, together with the costs, being made to him ; so that until the goods are actually sold by the sheriff, the defendant has the right to redeem them, in order to prevent a further accumulation of costs and a loss by a sale of them for prices under their real value. The act of assembly of the 22d of February, 1821, regulating the fees to be received by sheriffs in such case, indicates this principle pretty clearly. But the consequence of the goods being destroyed in this case by fire, after the seizure, and before a sale could be made of them by the sheriff, without any default on his part, goes to show, to demonstration, as it were, the extent of the interest which the assured still continued to have in their being preserved from such destruction, or otherwise in being indemnified under the policy for the loss occasioned thereby

to him. It will not admit of a question, I apprehend, that the destruction of the goods by the fire must be his loss, unless he can obtain remuneration from the insurers upon the policy. Indeed there is no other upon whom it could possibly be made to fall, except the sheriff or the plaintiffs in the execution. As to the sheriff, it will scarcely be claimed that he is answerable, unless he failed to use ordinary diligence in taking care of and preserving the goods; for he can only be considered a bailee at most for compensation, and therefore responsible only for ordinary negligence. *Story on Bail.* 96, pl. 130, page 263, pl. 398. That he was guilty of such negligence, or did not use ordinary diligence, is not pretended. And as to the plaintiffs in the execution, it must be admitted that they are innocent and free from all blame whatever. The only person therefore connected with the goods taken in execution and destroyed by the fire, that appears to have been in default, is the assured, the defendant in the execution; and he doubtless is so, because he did not long before pay to the plaintiffs the debt for which the goods were taken in execution. Hence the plaintiffs having failed, without any default on their part, or that of the sheriff, to derive any benefit or satisfaction for their debt, from the goods of their debtor having been taken in execution, it would appear to be just and reasonable that the assured should still be held liable upon the judgment against him to pay the debt for which his goods were taken in execution. Under this view, his interest in the policy was as great at the time of the loss of the goods by fire as at any time before. Consequently he is entitled to recover upon the policy, unless from the evidence given on the trial, the jury could have found, from the seizure of the goods by the sheriff, and his conduct in regard to them, that the risk had been materially increased. We are satisfied however, that none of the evidence given tended to prove any thing of the sort; and without evidence tending to prove it, the court would have erred, had it referred such a question, as a matter of fact, to the jury, to be decided by them. From the evidence, it appears without any contradiction whatever, that the goods remained precisely in the same situation after the seizure that they were in before, when it is admitted that they were covered and protected by the policy. But it is said that the sheriff, after making the seizure, fastened down the windows, closed the window-shutters, and locked the doors of the store-houses containing the goods, and having done this took and kept the keys in his own possession. The fire, it must be observed, happened in the night, long after the usual time of closing stores and ceasing to do business in them, indeed after all the citizens had gone to bed; so that the store-houses were really in the same situation, at the time of the fire, that they doubtless would and ought to have been, had no seizure been made. The circumstance of the sheriff's having the keys, and being out of the place at the time of the fire, is immaterial, because it had nothing to do with producing

(The Franklin Fire Ins. Co. *v.* Findlay.)

the fire, and could not in the least degree prevent the goods from being destroyed by, or saved from it ; for the doors could have been forced open, had it been thought that it would have availed any thing, in as short a time without the keys, as they could have been opened by the use of them.    Findlay, the assured, was present at the fire, and having the same interest in the goods to save them from being destroyed that he ever had, must be presumed to have done all that he would, had the seizure not taken place.    There is not therefore any ground, so far as the evidence goes, upon which any increase of risk can well be imagined.    The judgment is therefore affirmed.    .

Judgment affirmed.