FREEMAN RICE & another *vs.* LUKE B. TOWER & trustees.

A mortgage of personal property, without a transfer of possession to the mortgagee, is not such an alienation of the property as will avoid a policy of insurance thereon.

A seizure of goods on execution, without removing them, leaves the general property in the goods in the debtor, and is not such an alienation as will avoid a policy of insurance on the goods.

An application for insurance on goods represented that the goods were in a " store occupied by the assured; " and the policy issued thereon provided that if the assured, without notice to the insurers, should appropriate the building to other purposes than those mentioned in the application, the policy should be void. The goods were afterwards seized on execution, and part of them sold by the officer at public auction in the same store, without notice to the insurers. *Held,* that the use of the building for the auction sale was within the control of the assured, and therefore not within the exception in the policy of " means not within the control of the assured: " but that the above facts did not of themselves show such an increase of risk as to enable the court to decide that the policy was thereby avoided.

THE Adams Mutual Fire Insurance Company, being sum-moned as trustees of the principal defendant, made answer, by William P. Brayton, their secretary, to the following effect:

On the 4th of October 1853, they issued a policy to the defend ant, whereby they insured him against loss or damage by fire, under the conditions and limitations expressed in the rules of the company, annexed to the policy, (of which those relied on by the trustees are copied in the margin,*) and subject to the lien given

---

* ART. 16. When buildings or property insured are alienated by sale or other-wise, the policy on the same may be surrendered by paying all assessments then due. · In all cases where a policy is to be assigned, the assignee must sign the deposit note, or give a new note, and if the secretary require, the assignment shall be approved by not less than two directors of the company, and recorded on the policy, and on the books of the company. In case of the death of any person holding a policy in this company, said policy shall continue to attach to the buildings or property, in the same manner as if the original owner were living, for the benefit of his legal representative.

ART. 17. If the assured shall alter or enlarge a building so as to increase the risk, or appropriate it to other purposes than those mentioned in the application, or remove any personal property insured into another building, without giving notice to the secretary within thirty days after such alteration or removal, the policy, so far as it relates to property affected by this article, shall be absolutely void. But no alteration of the terms of insurance shall be made on account of a building or property being more or less hazardous by means not within the control of the insured.

by statute on the personal property insured, which the company expressed their intention to rely upon to secure the payment of assessments, from the 1st of October 1853 to the 1st of October 1854, " the sum of fifteen hundred dollars, divided as follows: $1000 on dry goods and other shelf goods in the front room of the store occupied by the assured, $500 on groceries and provisions in the back room of the same store and in the cellar, being not more than two thirds of the value of the property described in the application of said Tower, dated the 4th of October 1853, and lodged with the secretary of this company, and which said application shall form part of the contract to be taken in connection with this policy." The defendant, in his said application, among other things, represents that the building, in which these goods are, is occupied by himself as a store, and " covenants and agrees with said company that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation and value of the property to be insured, so far as the same are known to the applicant, and are material to the risk ; and the applicant further agrees that if any alterations in or about the premises described are made which materially affect the risk, he will notify said company of such alterations."

On the night of the 23d of December 1853, a fire occurred, from a cause unknown to the company, in the store where said goods were, and a portion of them was consumed thereby, but of what value is not known ; but the company deny that they are liable to pay any portion of said loss for the following reasons:

1st. On the 26th of October 1853, the assured, without the knowledge or consent of the company, made a mortgage of these goods to Peter G. Tower, conditioned to indemnify him against the liability which he had assumed as receiptor for the goods to John Holden, a deputy sheriff, who had attached the goods on writs against the assured. But the goods remained in the possession of the assured.

" 2d. On the 4th of December 1853, after the making of said mortgage and before said fire, and while the goods were still in

Rice & another *v.* Tower & trustees.

possession of the insured, said John Holden levied upon them, by virtue of executions issued on judgments rendered in the suits on which they were originally attached, and for which said receipt was given, and had sold a portion of the same at a sheriff's auction sale in said store, where they had been from the time the insurance was first effected, and was in process of selling the remainder when said fire occurred. A portion of them had been thus sold, and a portion at the time of the fire were remaining in said store unsold, but what portion of the whole remained there at the time of the fire unsold, said company does not now know. The auction sales of said deputy sheriff were held in said store during the daytime and the evening of each day, for several days previous to the fire. During said sales, every part of the store was open to those who attended them, and at times great numbers were in attendance. Of all which change the company had no notice and gave no consent."

*H. L. Dawes,* for the plaintiffs. The mortgage to Peter G. Tower was not such an alienation as to make void the policy. Angell on Ins. §§ 205, 208, 209. 1 Phil. Ins. (3d ed.) § 93. *Jackson* v. *Massachusetts Mutual Fire Ins. Co.* 23 Pick. 418. *Conover* v. *Mutual Ins. Co. of Albany,* 3 Denio, 254. Nor was the levy of execution by the deputy sheriff such an alienation. *Franklin Fire Ins. Co.* v. *Findlay,* 6 Whart. 483. Angell on Ins. § 72. The officer's taking possession of the goods and selling them at auction on the premises did not increase the risk as to the goods not sold. But if they did, they were " means not within the control of the insured," within the meaning of the 17th by-law of the insurance company, and were *in invitum,* and therefore could not make void the policy. *Smith* v. *Putnam,* 3 Pick. 221. *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 40. *Doe* v. *Carter,* 8 T. R. 57. *Catlin* v. *Jackson,* 8 Johns. 520.

*C. N. Emerson,* for the trustees. The representation in the policy and application that the property was in the " store occupied by the assured," was a material representation, if not a warranty. The possession and right of possession of the assured were lost at the time of the fire, both by the mortgage and by the seizure and sale on execution. *Bond* v. *Padelford,* 13 Mass.

394. *Johns* v. *Church*, 12 Pick. 557. Story on Bailm. §§ 124–134. *Miller* v. *Adsit*, 16 Wend. 335. *Duncan* v. *Sun Fire Ins. Co.* 6 Wend. 488. *Saddlers' Company* v. *Badcock*, 2 Atk. 554. *Wilson* v. *Hill*, 3 Met. 66. *Gilbert* v. *North American Fire Ins. Co.* 23 Wend. 43. *Carroll* v. *Boston Marine Ins. Co.* 8 Mass. 515. Hammond on Ins. 2, 18, 34, 125. *Clark* v. *New England Mutual Fire Ins. Co.* 6 Cush. 354. As the sale had commenced, the debtor's right of redemption was gone. Rev. Sts. *c.* 97, § 23. By the change from the possession of the owner of the goods to the possession of the officer, whose interest and object were not to take care of the goods, but to collect the amount of his execution, and by the holding of an auction sale on the premises under the circumstances set forth in the trustees' answer, there was a material change of interest and risk which avoided the policy, without showing that the alteration occasioned the loss. *Jackson* v. *Massachusetts Mutual Fire Ins. Co.* 23 Pick. 422. Hammond on Ins. 23, 95. *Brown* v. *Bement*, 8 Johns. 96. *Carter* v. *Boehm*, 3 Bur. 1909. *Merriam* v. *Middlesex Mutual Fire Ins. Co.* 21 Pick. 162.

METCALF, J. 1. The mortgage of the insured goods to Peter G. Tower, who did not take possession of them, was not such an alienation as vacated the policy. So the law has been held in regard to real estate that is mortgaged after it is insured. *Jackson* v. *Massachusetts Mutual Fire Ins. Co.* 23 Pick. 418. And we see no reason for a distinction, on this point, between real and personal property.

2. Nor was the seizure of the insured goods on execution without removing them, an alienation that avoided the policy. There are *obiter dicta* in the books, that by seizure on a *fi. fa.* the debtor's property in the goods is lost; that the sheriff acquires a special property, but that the general property of the debtor is devested and is in abeyance. See 1 Lev. 282; 1 Vent. 53; 6 Mod. 293; Holt, 647; 4 Mass. 403; 2 Mass. 517. But the law never was so. The general property in goods seized on execution remains in the debtor until they are sold. *Shelton's case*, Dyer, 67 *b*, *note*. *Dunnal* v. *Giles*, 1 Brownl. 41. *Lowthal* v. *Tonkins*, 2 Eq. Cas. Ab. 381. *Blake* v. *Shaw*, 7 Mass. 506

Rice & another *v.* Tower & trustees.

*Ludden* v. *Leavitt*, 9 Mass. 105. *Churchill* v. *Warren*, 2 N. H. 298. *Folsom* v. *Chesley*, 2 N. H. 432. *The King* v. *Wells*, 16 East, 278, 282. *Payne* v. *Drewe*, 4 East, 523.

3. Nor can the court decide, upon the answer of the under-writers, that the use of the building, for the auction sale on execution, enhanced the risk of fire, so as to avoid the policy. *Boardman* v. *Merrimack Mutual Fire Ins. Co.* 8 Cush. 583. *Franklin Fire Ins. Co.* v. *Findlay*, 6 Whart. 483. In a suit against them, on the policy, this question of enhanced risk would properly be left to the decision of the jury. But we cannot, in this trustee process, look beyond the facts stated in the answer.

The plaintiffs suggested, in argument, that if the risk was enhanced by the auction, yet that it was enhanced " by means not within the control of the insured ; " and therefore that under the 17th article of the company's by-laws the policy was not thereby avoided. We cannot yield to this suggestion. For we know of no law which authorizes an officer to keep attached goods, or to sell goods seized on execution, in the debtor's build-ing, without his consent.. And for aught that appears in the case, the execution debtor might have prevented the use of the building for the sheriff's auction.

The company must be charged on their answers. To what extent, beyond the value of the goods that had not been sold by the sheriff before the fire, if at all beyond that value, we do not now decide ; not having before us sufficient facts as to the sale, to enable us to determine the legal effect thereof on the com-pany's liability. If the parties do not adjust the matter, out of court, the question, as to the amount for which the company are chargeable, must be settled on a *scire facias* against them.

*Trustees charged.*