HERMAN BROS. *v.* KATZ BROS.

(*Jackson.*    May 11, 1898.)

1. FIRE INSURANCE.    *Change, by levies upon insured property, does not avoid policy.*

The change of title and possession wrought by levy of attachment upon insured property, and possession of the officer thereunder, followed by subordinate constructive levy of an execution thereon and by appointment of receiver under the attachment proceedings, who never obtained possession, is not, in the absence of proof or inference that the hazard was thereby increased, such change as will avoid the policy under a provision therein that it "shall be void if any change, other than by the death of the assured, take place in the interest, title, or possession of the subject-matter of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the assured, or otherwise." (*Post, pp. 119–129.*)

Cases cited: Pennebaker *v.* Tomlinson, 1 Tenn. Ch., 603; Brown *v.* Allen, 3 Head, 429; Bradley *v.* Kesee, 5 Cold., 226; Connell *v.* Scott, 5 Bax., 598; Green *v.* Shaver, 3 Hum., 138; Snell *v.* Allen, 1 Swan, 208; McKnight *v.* Hughes, 4 Lea, 525; Puckett *v.* Richardson, 6 Lea, 58; Montgomery *v.* Realhafer, 85 Tenn., 668; Overton *v.* Perkins, 10 Yer., 329; Tyler *v.* Dunton, 1 Tenn. Ch., 361; Evans *v.* Barnes, 2 Swan, 293; Malone *v.* Abbott, 3 Hum., 533.

2. SAME.    *Clause as to changes construed.*

In the clause of a fire policy providing that it "shall be void if any change, other than by the death of the assured, take place in the interest, title, or possession of the subject-matter of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the assured, or otherwise," the parenthetical clause, to wit, "except change of occupants without increase of hazard," operates to limit not only the preceding words, "possession and interest," but the word "title" also, and the exception

applies to insurance of personalty as well as realty. (*Post, pp. 121–125.*)

Cases cited: 136 N. Y., 375 (S. C., 32 Am. St. Rep., 752); 144 N. Y., 195; 149 N. Y., 382.

FROM DYER.

Appeal from Chancery Court of Dyer County. JNO. S. COOPER, Ch.

JOHN RUHM & SON, DRAPER & RICE, and NATHAN COHN for Complainants.

M. M. MARSHALL, STOKES & STOKES, DEASON & RANKIN, and HARWOOD & TYREE for Defendants.

McALISTER, J. Complainants, who are creditors of defendants, Katz Bros., filed these bills in the Chancery Court of Dyer County, alleging that defendants were fraudulently disposing of their property, and caused attachments to be levied upon a stock of goods in defendants' storehouse in the town of Dyersburg, Tenn. On the same night the attachments were levied, to wit, December 3, 1895, Katz Bros. procured judgments aggregating about $3,800, to be rendered against their firm, before a Justice of the Peace of Dyer County, in favor of certain relatives and friends. Instanter executions were issued upon these judgments, which, by consent of the Sheriff, who

had levied the attachments, were levied upon the same stock of goods subject to the prior levy. On December 9, 1895, on motion of complainants in the attachment cases, a receiver was appointed to take charge of the stock of merchandise and sell the same. About two o'clock A.M., on December 10, 1895, and before the receiver had taken charge, the entire stock of goods was destroyed by fire. Katz Bros. were insured against loss by fire on this stock of merchandise in the aggregate amount of $10,500. Complainants thereupon filed amended and supplemental bills in these causes against the defendant insurance companies, attaching the policies and seeking to subject their proceeds to the satisfaction of their claims.

Defendant insurance companies denied any liability on said policies, and, among other defenses, relied principally upon the following clause contained in each of the policies, to wit: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if any change, other than by the death of the assured, take place in the interest, title or possession of the subject-matter of insurance (except change of occupants, without increase of hazard), whether by legal process or judgment or by voluntary act of the assured, or otherwise." The contention made on behalf of the insurance companies is that the levy of the attachments and executions invalidated the policies, under the express provisions of this clause. The Chan-

cellor was of opinion that the levies of the attachments and executions did not render the policies void, and did not cause any increase of hazard, and that defendant insurance companies were liable on said policies to complainants to the extent of their respective debts, and so decreed.

The Chancellor further found that when the fire occurred the key to the storehouse in which said stock of merchandise was stored was still in the possession of the Sheriff. The Court further found that the stock of goods was worth more than $10,-500, the amount of the insurance.

Defendant insurance companies appealed, and have assigned errors. The second assignment is, that the Chancellor erred in holding that the levy of the attachments and executions by the Sheriff and Constable, and the possession of said officers under their levies and the appointment of a receiver, did not render the policies void under their terms, provisions, and stipulations. It will be observed that each of the policies provides that if any change takes place in the interest title, or possession, whether by legal process or judgment or otherwise, the entire insurance shall be void, excepting, however, a change of occupants without increase of hazard.

The argument is, that the levy of the attachments and executions worked such a change in the title, interest, and possession of the subject-matter of the insurance as avoided the policies. It is argued that the limitation contained in the clause, "except change

of occupants without increase of hazard," refers alone
to cases where real estate is the subject of insurance,
as the word "occupant" clearly indicates. It is
said further, that if the word "occupant" may
properly be applied to personal property as the sub-
ject of insurance, it can only limit the words "pos-
session and interest," and not the word "title."
It is further insisted, that if the word "occupants"
be construed to limit the entire phrase "interest, title,
or possession," the proof shows an "increase of haz-
ard," which, by virtue of said clause, avoids the policy.
It is not true, as assumed by counsel for appellants,
that the word "occupant" has reference always to
real estate. As shown by counsel for appellees, the
words occupant and occupancy are frequently used in
connection with personal property by commentators
and lexicographers. Blackstone, in chapter 26, book
2, page 400, *et seq.*, under the head of "Title of
Things Personal by Occupancy," says: "Whatever
movables are found upon the surface of the earth
or in the sea, and unclaimed by the owner, they
belong to the first occupant or fortunate finder."
In a subsequent part of the chapter "accession" is
used where title of realty by "occupancy" is dis-
cussed. And in the same chapter, on page 399:
"A property or title in goods and chattels movable
may be acquired by occupancy, which was the only
and primitive method of acquiring property at all."
See, also, Bouvier, title "Occupancy and Occupant;"
Broom's Legal Maxims, p. 355.

Richardson's Dictionary defines to occupy: "To take or seize, to hold or keep possession of, to possess." Standard: "To have in possession and use." Webster defines occupant thus: "One who occupies or takes possession; one who has the actual use or possession, or is in possession of a thing." Worcester: "One who has the actual use or possession of a thing."

The case of *Walradt* v. *Phœnix Ins. Co.*, 136 N. Y., 375 (S. C., 32 Am. St. Rep., 752), presents a striking analogy in its facts and the questions of law involved to the case now in judgment. The suit was upon an insurance policy which contained a clause identical in terms with the one at bar. The Court said, viz.: "We must first determine what the parties to the contract intended when they made use of the terms 'change in interest, title, or possession of the subject of insurance, whether by legal process,' etc. The change of possession produced by the levy and the action of the Sheriff must now be considered. The policy is not avoided, by the terms of the condition referred to, by every change of possession that may take place in the property. A 'change of occupants without increasing the hazard' is excepted from the operation of the condition, and does not invalidate the insurance. Counsel for the defendant argues that the exception in the condition does not apply when personal property is the subject of the insurance, and does not apply in this case, as there cannot be an occupant

of goods in a store consistent with the ordinary and appropriate use of language. The word 'occupant' is certainly sometimes used with reference to personal property. When the subject of insurance is a ship—a building not attached to the soil so as to become part of the realty or other things of like character, as, for instance, a tent or a chair or a sofa, the term 'change of occupants' would, it will be admitted, be appropriate. When it is used in reference to goods in a store, its fitness is not at first glance so appropriately apparent, but, as the words of the policy were used to meet all cases, we have no right to say that the exception in the condition was not designed to apply when goods were the subject of insurance, merely because the term 'change of occupants' does not seem to be the most natural and appropriate. A large part of the contracts of insurance now entered into relate to personal property, and to hold that such an important exception, as that now under consideration, to the broad terms of a condition had no application to such contracts, would make the rights of the parties turn upon the literal meaning of a word, and to the meaning most in use. What the parties intended was that a change in the control and dominion over the property should not avoid the policy, unless such change rendered the risk more hazardous. A change in the possession of a store of goods must, moreover, refer to the place where the goods are situated. In this case they

are described as situated in a brick store. The place where the goods were kept, though not the subject of insurance, was an important element in the risk, and it was natural and proper for the parties to provide against a more hazardous change in the occupancy of that place, and hence the parties agreed that in case the possession of the goods changed, that fact alone would not avoid the policy, unless the occupancy of the place where they were was also changed in such manner as to become more hazardous. In this way the words of the exception can be given their ordinary and natural meaning, and the exception itself can have effect. It is only in a plain case that we are warranted in saying that the parties have used language not intended to have any application to the subject-matter of the contract." See, also, *German Fire Ins. Co.* v. *Home Ins. Co.*, 144 N. Y., 195; *Wood* v. *American Fire Ins. Co.*, 149 N. Y., 382, where the Walradt case is approvingly cited. We think that case presents a conclusive answer to the argument submitted by counsel for insurance companies, and no further discussion is needed on this branch of the case.

It is argued, however, by counsel for appellants, that, whether the proviso applies to real or personal property, or both, in no event could it refer to or limit the preceding word "title," and that a change of title, whether the risk is increased or not, would terminate the policy under this clause. The argument is, that under the decisions of this Court,

the levy of an execution invests the levying officer with the title to personal property. Citing *Penne-baker* v. *Tomlinson*, 1 Tenn. Ch., 603; *Brown* v. *Allen*, 3 Head, 429; *Bradley & Dortch* v. *Kesee*, 5 Cold., 226; *Connell* v. *Scott*, 5 Bax., 598; Freeman on Executions, Sec. 268.

It is well settled in this State, that the levy of an attachment does not divest the debtor of the title to the property, but simply creates a lien upon it. *Green* v. *Shaver*, 3 Hum., 138; 4 Lea, 525; 6 Lea, 58; 1 Pickle, 668; *Snell* v. *Allen*, 1 Swan, 208; *Connell* v. *Scott*, 5 Bax., 598.

It is insisted by counsel for complainants, in an argument evincing much research and ability, that the levy of an execution on personal property vests in the officer a special or limited property, and does not divest title out of the debtor. It is argued that this is so because the debtor may sell the property subject to the right of possession in the officer, and, further, that the mere payment of the debt by the debtor operates as a discharge of the execution, and causes the possession to revert instanter to the debtor, without a decree or conveyance. *Overton* v. *Perkins*, 10 Yer., 329; *Tyler* v. *Dunton*, 1 Tenn. Chy., 361; *Pennebaker* v. *Tomlinson*, 1 Tenn. Chy., 602.

It is said in several of our cases that, by the levy of an execution, the title of personal property levied on passes to the officer, and that this is so because a seizure to the value of the debt *prima*

*facie* satisfies it and discharges the debtor. *Brown* v. *Allen*, 3 Head, 429; *Bradley* v. *Kesee*, 5 Cold., 226; *Connell* v. *Scott*, 5 Bax., 598; *Evans* v. *Barnes*, 2 Swan, 293.

Other cases speak of the possession of the levying officer as a limited or special property in the goods. *Malone* v. *Abbott*, 3 Hum., 533; *Evans* v. *Barnes*, 2 Swan, 293; Caruthers' History of a Lawsuit, Sec. 331 (Martin's Edition).

A careful review of the cases will probably show that the terms were used interchangeably, and mean that the title thus acquired by the Sheriff is not absolute, but only for the purpose of satisfying the execution debt. However this may be, the levy in this case was subordinate to the attachment levy, and contingent upon any surplus arising after the satisfaction of the attachments. The levy of the execution was merely constructive, and did not change the status of the property or its custody or control. Since, then, these levies were dependent and made with the consent of the Sheriff to reach a contingent surplus, there is no merit in the contention that the policies were thereby vitiated.

It is next insisted by appellants that there was in fact an increase of risk or hazard, and, therefore, the policies became void notwithstanding the exception. It suffices to say the record fails to show there was any increase of the risk. The situation of the stock of goods after the levy was identical with that surrounding it prior to the levy.

In the Walradt case, *supra*, the New York Court, upon a state of facts precisely like that in the case at bar, even to the removing of the insured from the store, and the locking up of the store, and the taking possession of the keys by the Sheriff, submitted to the jury the question whether, under the circumstances, the condition of the goods was more hazardous after the levy than before. The jury answered the question in the negative.

And in an early case, decided by the Pennsylvania Supreme Court in 1841 (*Franklin Ins. Co.* v. *Findlay*, 6 Wharton, 483; S. C., 37 Am. Dec., 430), that Court found that the Sheriff had levied the execution in his hands upon a stock of goods, had put the execution debtor out of doors, had fastened the shutters, locked the doors, and took and kept the keys. Say the Court in the latter case: "From the evidence, it appears that the goods remained precisely in the same situation after the seizure that they were in before. It is said the Sheriff fastened down the windows, closed the window shutters, and locked the doors, and, having done this, took and kept the keys. The fire happened in the night, long after the usual time of closing stores and ceasing to do business in them—indeed, after all citizens had gone to bed—so that the storehouse was really in the same situation at the time of the fire that it doubtless would and ought to have been had no seizure been made. The Sheriff had the keys and was away; but that is immaterial, because it had

nothing to do with the origin of the fire, and could not, in the least degree, prevent the goods from being destroyed or saved, for the doors could have been forced open had it been thought that it would have availed anything in as short a time without the the keys as they could have been opened by the use of the keys. There is no ground, so far as the evidence goes, upon which any increase of risk can well be imagined."

Other questions of fact were disposed of orally, and the decree of the Chancellor is affirmed.