The action stood continued for advisement until this term, when the following opinion was delivered by
* Sewall, J.
The first objection made for the defenddants is, that the plaintiff, at the time of the loss, had no interest in the building originally insured to him by the policy in the case.
The facts admitted by the pleadings are, that, after the issuing of the policy, the plaintiff sold and conveyed to Thomas Harris a part of the building insured, reserving a term of seven years in the premises ; and that Harris at the same time reconveyed them to the plaintiff, in mortgage, to secure the purchase money. And it appears that the occupants, at the time the building was burnt, held under a lease from the plaintiff, upon a rent payable to him quarterly.
The sale and contracts between the plaintiff and Harris affecting a part only of the premises insured, it is a question for the jury to determine, what interest the plaintiff retained, and the value of it. It may be further observed that a sale and reconveyance by mortgage to secure the purchase money, executed at one time, are, for many purposes, to be regarded as one instrument. And taking all the writings together, the actual sale of the property insured, as to the moiety affected by these contracts, was, substantially, and, in answering a question of the interest of the plaintiff, to be considered as, a conditional sale after the expiration of seven years. This objection does not arise upon the terms of the contract. The 18th article, especially if we connect with it the 2d article, imports a continuance of the contract, notwithstanding an alienation of the premises insured. It seems to have been the intent of the parties *297 that, in this mutual insurance, although the insured is at liberty, upon an alienation, to surrender his policy, or to transfer it, yet that his deposit and personal responsibility are retained by the company until a surrender, or an acceptance of the assignee by an entry in the transfer books of the company.
But, however this maybe, the objection, if the facts had warranted it, must upon general principles prevail. It is a maxim of public policy, important to good morals, and for the prevention of frauds in contracts of this nature, that gaming insurances, insurances without interest, are unlawful and of no validity. It is incumbent, therefore, upon the party * claiming a loss [ * 337 ] upon a policy of insurance, to show an interest in the subject of it, and in the event insured against; and his demand must appear to be for an indemnity, and not for a wager, become successful, as in this instance, by a public calamity. An objection of this kind is not supported by showing contracts affecting the formal title of the plaintiff, in a part only of the subject of the insurance. His interest in a part remains the same; and perhaps substantially, and for the purpose of repelling this objection, is to be considered as unaltered in the whole of the premises insured.
Upon the whole, it is the opinion of a majority of the Court, that the replication to the second plea in bar is sufficient in law.
The second objection is, that certain alterations, in reference to the representation of the state of the building insured when the policy was effected, had been made by the party insured, whereby his policy was vacated, and the defendants were discharged from this insurance before the loss happened.
This objection may be examined upon general principles, and upon the terms of the contract.
The estimate of the risk undertaken by an insurer must generally depend upon the description of it made by the insured or his agent. (1) A mistake or omission, in his representation of the risk, whether wilful or accidental, if material to the risk insured, avoids the contract. (2) And where the estimate of the risk depends upon the continuance of the material circumstances represented to the insurer, these are not to be altered to his detriment, by any act of the insured, with out a like effect upon the contract.
But to what degree is the insured restrained in this respect ? If every, the least, alteration or enlargement of a building insured against fire, is necessarily and of course material to the risk, and, whenever it is made by the act or consent of the insured, is to va cote the policy, unless it should be renewed by the insurer,—-so *298 [ * 338 ] close a restraint upon ¡the party would place * contracts of this kind in a state of complete uncertainty ; and would render them so inconvenient as wholly to prevent them.
This degree of restraint will not be contended for. But in the argument for the defendants, it has been contended that the enlargement of a building, represented to be contiguous to other buildings on one side only, to the effect of making it contiguous on two sides, is, under all possible circumstances, a material alteration, which ought to discharge the policy ; and that it is to be considered in the light of a departure from the voyage described, in a marine insurance, and must have a similar effect upon a policy to insure against fire.
The true reason why, in a case of marine insurance, a deviation discharges the insurer, is not the increase of the risk ; but that the party contracting has voluntarily substituted another voyage for that which was insured. (3) This change of the voyage determines the contract from the time it happens. The same strictness is not requisite in an insurance against fire, where the building, although enlarged or repaired, remains the same; and it is only necessary to guard the insurer from an increase of his risk, by an alteration of the building insured. And if an alteration of the kind alleged in this case may be made, under any circumstances, without increasing the risk of the insurer, there can be no reason, upon general principles, that it should determine the policy. Suppose, for instance, the subject of the insurance to be a wooden building, separated at the distance of a few feet from a brick wall in another building, and to be enlarged and made contiguous to the brick wall; it is obvious that such an alteration may diminish, and not increase, the risk. And if this may be reasonably supposed in any case, then, whether the enlargement of a building insured has increased the risk of the insurer, is a question of fact, to be determined by the jury.
The parties to this contract appear to have been aware of the inconvenience which a minute restraint in this respect would produce to the insured, and the effect upon the policy from alterations in the building insured, has not been left as a question of con- [ *339 1 struction upon general principles ; but * has been regulated by express stipulations in the contract, which must determine the law between the parties.
The value, materials, and uses, of any building proposed to be insured, and its situation relative to other buildings, and the consequent estimation of the rate of hazard, are understood to be represented by agents appointed for the purpose, who are to state and *299 certify these circumstances to the trustees of the company, by whom, and at whose discretion, the policy is to be issued. [Article 7.J By the preceding article, the trustees are authorized to annul a policy, whenever the insured shall repair or enlarge his building, or appropriate it to other purposes than those mentioned in the policy, “ thereby rendering the risk greater,” unless the insured will add to his premium an equivalent in the estimation of the trustees. By a subsequent article, this power of the trustees is not to extend to any case where a building “ becomes more or less hazardous,” by means not under the control of the insured.
By these stipulations, we discover what, in the intentions of the parties to this contract, was to be estimated a material alteration from the representation given of the building insured. Whether the alteration is by repairs, by enlargement, or by a new appropriation of the building, it must in fact render the risk greater, the building must become thereby more hazardous, or it is not material, and is not allowed to affect the contract, (a)
The averment, therefore, in the plea of the defendants, in the case at bar, that, by the enlargement of the building insured, the risk had been increased, is material, and must be maintained, or their plea is insufficient. The traverse of that averment is confessed by the demurrer, and the replication must be adjudged sufficient.
And it is the opinion of a majority of the Court, that the replication to the third plea in bar is good and sufficient in law.
Parker, J., concurred.
Parsons, C. J., had been of counsel in the cause, and gave no opinion.
Sewall, J., then observed that the judges Sedgwick and Thatcher, who were not at this time present in Court, did not perfectly concur in the opinion which had been delivered, * but [ * 340 ] had finally consented that judgment should be rendered by the two justices who had concurred, in their absence, and this the rather as the judgment is open to a writ of error. (b)
†

 Marshall, 335

 Ibid. 339

 Marshall, 394, 186, Lavabre vs. Wilson.

 [Curry vs. The Commonwealth Ins. Co., 10 Pick. 535. — Ed.]

 [Strong vs. The Manufacturers Ins. Co., 10 Pick. 40. — Gordon vs. Mass. Fire and Marine Ins. Co., 2 Pick. 249. — Lazarus vs. The Commonwealth Ins. Co., 5 Pick 76. — Lock vs. The North Am. Ins. Co., 13 Mass. Rep. 61. — Higgins vs. Dall, 13 Mass. Rep 96. — Bartlett & Al vs. Walter, 13 Mass. Rep. 267. — Carl & Al. vs. The Boston M. Ins. Co., 8 Mass. Rep. 515. — Curry vs. The Commonwealth Ins. Co., 10 Pick. 535. — The Columbian Ins. Co. vs. Lawrence, 2 Peters, 46. — Merriam vs. The Middlesex Mutual Fire Ins. Co., 21 Pick. 162. — But see Carpenter vs. The Providence Washington Ins. Co., 16 Peters, 495. — Ed.]

 The reporter has been favored, by his honor, Judge Sedgwick, with the following note of the grounds of his opinion: —
When the plaintiff applied to the defendants to insure the property, far the destruction of which this action is brought, the representation which he made, and which was required by the rules of the company, was, doubtless, intended to enable them to con *300 tract understanding^, and on equal terms, with the plaintiff. By that representation it appears — and so was the fact — that the insured premises were, at that time, connected with other buildings on one side only. Had they been so connected in other parts, no reasoning is necessary to show that danger from fire would have been thereby increased, and that, therefore, a higher premium would have been demanded for the insurance. Independent, then, of any express stipulation, if, by any future event, authorized or permitted by the insured, there was a material alteration in the state of the insured property, whereby the danger of destruction by fire was increased, — it is dictated by reason and justice that the defendants should thereby be discharged.
But in this case, it is not necessary to rest on the reason of the thing. The mealing is rendered very apparent by what is explicitly declared. For it being stipulated n the 8th article of the rules and articles of the company, that “ no alterations in „erms of insurance shall be made on account of a building’s being made more or less hazardous by means not under the control of the insured,” it is rendered certain, without referring to other articles, by which the same is implied, that the terms of insurance shall be altered, whenever a building is rendered more hazardous by means tinder the control of the insured ; or, in other words, that the contract shall not, without such alteration, be binding on the insurers.
There can, then, be but two questions, that 1 can perceive, to decide this cause 1. Was this building, by an alteration, rendered more hazardous after the contract ? And if so, 2. Was that alteration made by means under the control of the insured ?
1. As to the first question, at the time of the insurance the property insured was connected on one side only with other buildings; and it is agreed, that afterwards, and before the fire, alterations were made, “ by means of which the insured building became connected on two sides with other buildings, whereas, at the time the policy was effected, the said building was connected with others on one side only.” Did this increase the hazard ? To my mind, no reasoning can render more clear the proposition, that in a populous town, a building connected with others on two sides is more exposed to fire than if connected on one side only. It is, then, as 1 conceive, most certain, that, after the policy was made, the hazard of destruction by fire was increased.
2. Was this increase of hazard by means under the control of the insured? By the state of facts existing at the time of the contract, this must be determined, unless an alteration takes place, by means which the insured could not have controlled. In this case, tile land, on which the building connecting the insured building after the contract with other buildings, was, at the time of effecting the policy, the property of the plaintiff He could, therefore, prevent that building from being erected. If it was erected by another, in consequence of an alienation of the land on which it was erected, then the means of erecting it was the alienation, which might have been omitted; and of consequence the erection itself might have been controlled by the plaintiff It does, on the whole, appear most clear to me, that after the policy was made, the hazard of destruction by fire was increased by means which might have been controlled by the plaintiff, and that thereby the contract of the defendants is discharged.
Nor do I think that the plaintiff is aided by the verdict. The verdict has found, it is true, that the premises were not repaired or enlarged, whereby the risk by fire was rendered greater. The jury, it seems to me, by the verdict have found only the legal inference. From the nature of the contract, in relation to the subject matter, the question was, whether the hazard had been increased by means under the control of the plaintiff Now, there has been erected, by means under his control, a building connecting the insured premises with buildings with which it was not connected at the time of the contract; and the inference is, in my opinion, irresistible, that thereby «the risk by fire was rendered greater.” The issue, therefore, on which the verdict was rendered, was, I think, immaterial, and so the finding of the jury ought not to conclude tí e parties against the truth of the facts.