STAHARD, J.
In this case certain facts have been agreed by the parties, and the law on those facts submitted to the court; the parties agreeing that if it be for the plaintiff, judgment shall be entered for a specified amount. The only question presented then is, has the plaintiff, on the facts agreed, a right of action against the defendants? the agreement of the parties as to the amount of damage precluding an enquiry by the court into that matter.
The original insurance is free from all exception, and the property embraced by it having been destroyed by the risk insured against, the right to the action is clear, unless the interest of the insured in the property had been extinguished at the time of the loss. It is said to be extinguished by the executory contract of sale made before the loss. That contract, if it had been carried into full execution according to its provisions, would have left the insured a mortgagee. The existence of that interest, of sufficient stability to sustain an original policy, is surely sufficient to repel the pretension that the interest was extinguished. If the contract executed would not extinguish the insurable interest, the contract executory surely would not. The interest so abiding in the insured would have entitled him to recover the full amount of the insurance on the loss, without subjecting him to a delay of his claim on the insurers, until he had shewn, by the pursuit of the claim on the mortgagor, that it could not be recovered from him. Stetson v. Massachusetts Fire Ins. Co., 4 Mass. Rep. 330.
*The mortgagee confessedly has an insurable interest, and yet it is nowhere intimated in any treatise or adjudication on the subject, that, in the event of destruction of the property, his claim on the policy must await the pursuit of his claim on the mortgagor.
A commission merchant, in the habit of making advances on consignment, has an insurable interest in the consigned property to the extent of his advances. Though I have not found a judicial decision on the precise point, j’et in the case of Parks v. General Interest Assurance Co., 5 Pickering 34, the immediate right to demand of the insurer the amount of advances on the property destroyed, without a previous pursuit of the claim on the consignors for the advances, was not questioned by the insurers.
Where the hundred is responsible for the loss by fire, it would seem that the insured is entitled on the policy to the full amount, though he might recover full indemnity from the hundred.
But, independent of the foregoing considerations, I think that on the facts agreed, the insured was entitled to recover the full insurance; those facts ascertaining that he was interested in the loss to that extent. There is no ground on which his claim is resisted, but that furnished by the ascription to the court of law, of power to look at the executory contract of sale in the manner a court of equity might, and to consider the interest in the property to have *654 passed by the sale, if a court of equity would, at the instance of the insured, decree its specific performance. Without giving' a judicial approbation to this proposition, but for this case conceding its correctness unquestionable, the enquiry is, on what terms .would this contract be enforced at the instance of the vendor? To the solution of this question it is material to ascertain the effect of the parol agreement, stated in the agreed case to have been made before and after the execution of the written contract of *sale, for the transfer by the vendor to the vendee of the policy of insurance. No one can reasonably suppose that the contract to transfer the policy was separate from and independent of the contract of sale. In the nature of things it is not to be surmised that such a separate and independent contract could precede that for the sale of the propert3r. We must understand that it constituted a part of the parol treaty for the sale, and formed one of the considerations of that parol agreement which must precede the reduction of it to writing, — -was omitted by accident or design in reducing it to writing, — and was subsequently recognized. By it, the vendor was to assure to the vendee the benefit of the insurance, and was bound to obtain the assent of the insurers to the assignment. This, in' a court of equity, could have been set up by the vendee in resistance of the specific performance which would deny him the benefit of the insurance; and a court of equity would not have compelled performance without an abatement for the loss. The assured was therefore interested at the time of the loss, to the full amount; and in every view of the case, I think the judgment ought to be affirmed.
TUCKER, P.
Without impugning the doctrines of insurance as laid down in the cases cited for the plaintiffs in error, I am of opinion that the judgment in this case was right.
In the formation of this opinion, I have been mainly influenced by the agreed fact, that both before and after the contract between Peay and Morrison, there was a parol agreement that Morrison should transfer to Peay the policy of insurance. It is objected however that that agreement cannot be admitted, either as a distinct, independent contract,.or for the purpose of affecting the written contract. And this question is reserved. It must, I think, be decided against the plaintiffs in error.
*By whom was the evidence of this parol contract introduced, and on whose behalf was it designed to operate? Was itintroduced by the plaintiffs in error? If so, how is it competent for them now to deny the validity and effect of their own evidence? It is impossible; and it is accordingly intimated at the bar that it was introduced by and on the part of Morrison. Now Morrison was the party to be bound by it, and if he chooses to recognize it as a binding and valid agreement, notwithstanding it was by parol and not introduced into the body of the agreement, who can gainsay it? A parol contract is not void by the statute of frauds, though its obligation may be repelled by the party sought to be bound by it. The protection is introduced for his benefit by the statute, and may of course be renounced by him. If he is willing to abide by it; if, disdaining the mala fides of breaking his plighted faith, merely because the ceremonies of the law have been neglected, he recognizes the contract and confesses its obligation, shall it not be enforced? Let the unvarying course of equity cases answer the question. How then can it be objected by a third person, that the contract which the party himself acknowledges and claims to be valid and binding upon him, is not to be so considered? The pretension I conceive to be utterly without foundation.
I take the agreement, then, to assign the policy, as a substantive and most material part, of this case; and I will now proceed to shew how (taking that fact into consideration) Morrison, at the time of the fire, was damnified by the destruction of the premises.
It cannot be denied that according to the spirit of the agreement to assign the policy, Morrison was bound to give to Peay the benefit of it when the house was burnt. By that occurrence, however, the policy became functus officio. An assignment after that would have been futile. But as, by the agreement, Peay was to have *the benefit of the indemnity, so it is clear that he would have been entitled to demand from Morrison any benefit which he might derive from the insurance. Nay more, if Morrison had instituted his bill against Peay to enforce a specific execution of the contract of sale, a court of equity must have departed from its ordinary principle of holding the purchaser bound by the loss, and have refused a specific execution except upon the terms of making gobd that loss. It could not have compelled Peay to sustain a loss which, by the very contract itself, it was clear he did not engage to abide, but against which, in effect, he contracted to be insured. If therefore Morrison could have enforced the policy, the court would have obliged him to give the benefit of his recovery to Peay, or to relinquish the contract; or if, as is now contended, the policy was rendered nugatory by the sale, the court, in the exercise of its sound discretion, would not have deemed a specific execution reasonable, since Peay was not in equity bound to bear the loss against which he had in effect contracted to be insured. Morrison must then have lost his contract, or indemnified against the damage.
What then was the state of the case immediately upon the happening of the fire? Morrison then had the legal title in him. But it is said, that having sold, the title was to be considered to be in Peay upon equitable principles. This position has been advanced upon false deductions from the principle that equity considers that as done which ought to have been done. But equity never so considers, but in behalf of one who has done equity, and has put himself in a condition to demand the execution of his contract. Now, at the time' of the fire, it did not appear whether the contract ever would be carried into complete effect. It did not appear whether Peay ever would or could comply, and therefore equity could *655 not consider the title to be in him. He had not delivered the bond which was to *have been delivered. That bond was to be the bond of a third person, and it might never have been in his power to deliver it. It was not delivered within the stipulated time. He then, on the Sth of May 1836, was in default, (for the bond had not even then been delivered) and on that day he had no right to demand a specific execution of the contract, and of course could not be deemed to have the title. The title was then in Morrison; the house burned was his house, and the loss sustained was his loss. This is the more manifest when we reverse the picture. Morrison sues for a specific execution. Peay repels the demand unless he will pay for the house: alleging that by his contract he was to be protected against loss by fire; that Morrison either can or cannot give him the benefit of the policy of insurance for which he contracted; that if he can, but will not, he has no title to relief; that if he cannot, then he cannot give what was most essential in the contract, and a court of equity will not relieve him. In the exercise of that discretion which is always exercised in bills for specific performance, it will not compel a party to execute the contract, when he cannot get that which he contracted for. It would be unreasonable to compel him to take the property without the indemnity, when he expressly contracted for the indemnity: and equity will not do that which is unreasonable.
This defence would be unanswerable, and Morrison must either have kept the land, or paid for the loss. If he kept the land, he would be clearly entitled to recover of the insurers. If he paid the loss, he would be a loser and entitled to indemnity from them to the identical amount.
It has been contended, however, that as the contract was carried into execution subsequently, it appears that Morrison sustained no damage. I am by no means satisfied that the fullest proof of his having received the entire consideration, without deduction for the loss, *could take from him a right of action which had previously attached. But if proof of indemnity by that means could be a bar, then it must be clearly established, and the onus is on the defendants. The damage having been proved by the plaintiff, the indemnification must be shewn by the defendants. But it is not shewn; since, for aught that appears to the contrary, Morrison is liable to the action of Peay for not transferring the policy, or has indemnified him for the loss, which, upon every equitable principle, he was bound to do.
Upon the whole, I think the judgment is right. The insurers have received their premium for a succession of years, and now seek to avoid the fulfilment of their contract, upon the pretext that the insured has received indemnity from another quarter. Without calling in question the cases on insurance, we should not be too astute, I think, in the application of a principle by which a burden is to be taken from the shoulders of those who have been paid to bear it, and cast upon one of two innocent persons who have advanced their money to be absolved from it.
PER CURIAM, Judgment affirmed.