# Girard Fire and Marine Insurance Company *versus* Stephenson.

*Fire Insurance, what will avoid Policy.—Concealment and Alterations by Insured Party.—Opinion of Court as to Evidence.*

1. In an application for an insurance, in which the location and description of the neighbouring buildings was properly given (one of which was a carpenter-shop), it was held that an omission to state that the shop was heated by stoves, or to say what provision was made for warming, was neither a fraudulent concealment of material facts, nor a breach of the covenants of the assured party; unless perhaps the heating was effected in an unusual and extraordinary manner.

2. In an action to recover for a loss by fire, which originated in an adjoining carpenter shop, the location of which was properly given in the application for the insurance, it is not error to permit the jury to decide whether stoves are customary and necessary in a carpenter-shop, coupled with instructions that if not necessary and customary the plaintiff could not recover.

3. Nor is it error in such a case for the court to permit the jury to decide whether the placing of a steam-engine in the shop, by which the stoves were superseded, had increased the hazard over what it would have been from the stove alone, with the instruction that if it had done so, and the loss was the result of the change, the plaintiff must fail, but if not the loss must fall upon the company, even though the fire may have originated from the engine.

4. Where an insurance policy provided that any alterations or repairs made in or about the insured property must be at the risk of the party insured, it was held that alterations or repairs did not *per se* avoid the contract, but·only that the insured party should assume the hazard of their increasing the liability of the insurer.

5. A doubt expressed by the court in charging the jury, as to the legal effect which certain evidence might have had in a supposed contingency, which was not in the case as presented to the jury, is no cause for reversal or writ of error.

ERROR to the Common Pleas of *Crawford county.*

This was an action of covenant brought by John W. Stephenson against the Girard Fire and Marine Insurance Company. The declaration was in the usual form, to which the defendant pleaded "*covenants performed absque hoc*," with leave to give the special matters in evidence.

On the 19th of June 1856, the plaintiff applied to Mr. Douglas, the agent of the company at Meadville, for an insurance on his dwelling-house and furniture. The application was in the printed forms used by the company, which contained the usual interrogatories as to risk, location, &c. The house was in the outer

[Girard Fire and Marine Insurance Co. *v.* Stephenson.]

limits of the town, but was reported to the company by the agent as a "farm risk," and was insured by a policy dated June 21st 1856.

There was a carpenter-shop mentioned in the application as "standing twenty-five feet west, not much used."

In the spring of 1857 this shop took fire, which, communicating with the insured building, burnt and destroyed the west end of it and injured more or less every room in the house.

On the 19th of May 1857, Stephenson applied for indemnity in writing, in which he stated that "the fire originated in a shop on an adjoining lot, from which it was communicated to his building," and that "he supposed the fire originated from an engine in said shop."

The company refused to pay the insurance-money, whereupon this suit was brought.

The defence was, that by erecting in this carpenter-shop a four horse power steam-engine, and by the introduction of a large quantity of dry pine lumber into a shop near the building for the purpose of manufacturing doors, sash, blinds, &c., without notice to the company, the plaintiff had changed the risk, which the company had assumed at their lowest rates, to one so hazardous, that no substantial company would insure on any terms, and that by means of this change the loss occurred.

The erection of the engine, the presence of the lumber for the purposes above mentioned, and the origin of the fire, were fully proven and were not denied.

The agent of the company testified that when Stephenson made the application for this insurance, he told him that he expected to be from home much of the time, and that the shop would be but little used, though he "might want to use it some to plane a board or something of that kind," and that no fire or stoves would in it during the following winter; that this conversation was not communicated to the company, though it induced him to report that the insurance would be in the "farmer's class of hazards." That he knew when Stephenson was putting up his steam-engine, and advised him to get the consent of the company, as it would be a great change in the nature of the risk, and that he might thereby lose his insurance.

Several points were presented to the court by plaintiff and defendant, on which the opinion of the court was requested.

The court (DERICKSON, P. J.) charged the jury at length, answering all the points presented; which was excepted to by defendants before verdict.

(The instruction given by the court below is quoted at length in the opinion of this court.)

Under the charge of the court, the jury found in favour of the plaintiff the sum of $625, and judgment being entered thereon,

[Girard Fire and Marine Insurance Co. v. Stephenson.]

the defendant below sued out this writ, and assigned for error certain portions of the charge of the court below, as are hereafter mentioned.

*Finny* and *Douglass*, for plaintiff in error, contended that Stephenson was bound in his application to state all the facts and circumstances in regard to the location, condition, and value of his property, but had made no reference whatever to the stoves used in the shop: 2 Peters U. S. Rep. 49. The jury should not have been permitted to decide whether stoves were necessary and customary in the shop. The phrase is too vague and uncertain. No company can insure and then permit the addition of whatever might afterwards be considered "necessary and customary" or proper.

The description of the insured property at the time of insuring should remain while the risk is running : 26 Eng. C. L. Rep. 344; 5 Ohio State Rep. 485; 4 Mass. Rep. 336, 342; 3 Selden Rep. 370; 2 Denio 75; 2 Kernan's Rep. 460; 6 Cowan 673.

The statements of the parties at the time of making a contract, and which are the inducement to it, are part of it: Hartman *v.* Keystone Ins. Co., 9 Harris 466; 1 Arnould on Ins. 488; 10 Peters U. S. Rep. 507.

*W. M. Stephenson,* for defendant in error.—The contract of the parties is in writing, and cannot be affected by loose conversations with the agent of the company, not communicated to its officers nor considered in undertaking the risk. This is expressly provided for in the policy. The agent was special not general, and without power to vary the written contract between the company and Mr. Stephenson.

The fact that he returned this as a "farm risk" would not warrant the inference that no stoves would be used in the shop.

The risk was taken on the written description. The ownership of the shop was not material, nor the changes that were made in it. It was no part of the insured property. It stood on a separate lot, and was properly described, without the owner being named. There is no stipulation in regard to changes made in adjoining property, except that which allows the company to terminate the risk if they please. The agent knew of this change; but if not, the contract would remain.

The opinion of the court was delivered, November 20th 1860, by
STRONG, J.—The written application for the policy contained a provision that the representations made by the assured therein were given as a warranty, and the policy itself stipulated that the representations given in the application should be a warranty on the part of the insured, and contain a just, full, and true

[Girard Fire and Marine Insurance Co. *v.* Stephenson.]

exposition of all the facts and circumstances, in regard to the condition, situation, and value of the property insured. Among the interrogatories propounded by the company, the answers to which make a part of the application, was the following:— " State the distance to other buildings. For what are the nearest buildings occupied, and of what materials are they built?" To this the answer of the assured was, " Shop for carpenter on the west, distance twenty-five feet, not much used. No other buildings within two hundred feet on the same side of the street. One frame building on the other side of the street, distant eighty feet." The insured premises having been injured by fire, which originated in the carpenter-shop, the defendants set up as a defence against their liability on the policy, that after it was signed the assured introduced a steam-engine into the shop, and used it in working lumber. On the trial of the cause in the court below, the jury were instructed, in answer to points propounded by the defendants, that the shop was a circumstance in the estimate of the risk taken by the underwriters, and that a voluntary enhancement of the risk by a change of the occupancy and use of the shop, by the plaintiff himself, would be a breach of the covenants of the policy on his part, and would prevent his recovery. They were also instructed that the covenants in the policy were to be construed with reference to the character of the risk taken, and if this was incompatible with the use of an engine and stove for working lumber in the shop by the plaintiff, it was an increase of the risk and avoided the policy. That it made no difference as to the operation of the covenants of insurance that the shop stood on one lot, and the insured house on another, or that the assured had acquired the property from different owners. That, if the risk had been so changed, as to become one which the underwriters would not have taken without an increased premium, or would have refused altogether, its voluntary enhancement by the plaintiff would prevent his recovery. That, if the assured obtained the policy under the representation that the shop would not be much used, and that no fire would be used in it, intending at the same time to occupy it permanently through the winter with a steam-engine and stove in which fires should be kept, it was a fraud upon the company and would avoid the contract. The court also instructed the jury that the setting up a steam-engine and use of the same in the shop was a change of the occupancy of the premises from the occupation stipulated in the application, and contrary to the covenants of the assured, if it increased the hazard and was the cause of the fire. Of all this the plaintiffs in error do not complain, nor could they. But they insist that the court erred in adding to these instructions ' the remarks that—" The shop belonged to the plaintiff (the assured) at the time when he made

his application; and when this was laid before the officers of the company, their action would necessarily be predicated upon the information, the several answers to the questions just imparted, and they would naturally consider whether a stove was necessary to the proper use and occupancy of a carpenter's shop, and this, we may suppose, would have its effect upon the deliberations of the officers in taking or rejecting the application. One or two witnesses say there had been two stoves in the shop for heating it. Was this necessary and customary? If it was not, the plaintiff must fail, but if it was, then another inquiry arises whether the placing of the engine in the shop, by which the use of the stoves would be superseded, increased the hazard over what it would have been from the stoves alone. If it did, and the loss was the result of the change, the plaintiff must fail. But if it superseded the stoves for heating, and was used for other mechanical purposes, but did not increase the hazard to any extent, the loss would fall on the company, although the fire may have originated from the engine."

I have quoted these assignments of error at length, in connection with the other instructions given to the jury, that their true bearing upon the case may be understood. The grounds of defence in the court below then not sustained by the charge of the judge, were that the representations in the application had not fully stated the circumstances material to the risk, in that there was no information given that there was a stove in the carpenter's shop, near the insured premises, and that the hazard had been increased by the voluntary act of the plaintiff. The description given of the neighbouring building was a shop for a carpenter not much used. Was it then a fraudulent concealment, or a breach of the assured's covenants, that he did not state that the carpenter's shop was heated, and what provision was made for warming it? If, instead of being a carpenter's shop, the adjacent building had been a dwelling-house, would he have been under obligation to state that there were stoves in that dwelling-house? And if he had neglected to do so, would his neglect have avoided the policy? A representation that a carpenter's shop stood twenty-five feet from the insured premises, informed the insurers that what is commonly understood by such a shop, what ordinarily constitutes it, and belongs to its use, was there. If there had been anything extraordinary in the manner of its being used or heated, anything which increased the risk of fire, it might have been his duty to communicate it specifically. But what is usual, what, in the language of the court below, is "customary" in such buildings, was communicated by the representation of the existence of the shop. In general, the use even of the building insured, and how it is heated, need not be represented except in reply to inquiries: Phillips on Ins. 636, and

cases there cited. That no more specific representations were contemplated by the parties, is apparent from the interrogatories addressed by the company to the applicant for the policy. He was asked how the building proposed for insurance was warmed, and how lighted; but he was not asked how neighbouring buildings were warmed and lighted, even though they entered into the estimate of the risk. The same particularity of description was not required in regard to the latter as in regard to the former. The court then committed no error in permitting the jury to inquire whether stoves are necessary and customary in carpenter's shops, and in holding that, if they are, the representation sufficiently informed the company that the risk which they took might be affected by stoves in this carpenter-shop. And if the jury found that the use of stoves in such a building is an ordinary and customary use, and consequently that the plaintiff, by not having specifically mentioned that they were used in this adjacent shop, was guilty of no fraudulent concealment, or breach of his warranty, then the risk undertaken by the defendants embraced the hazard consequent upon the presence and use of stoves there. That hazard the plaintiff might not increase, and still avail himself of his policy. The court submitted to the jury to find whether he had increased it, whether the substitution of a steam-engine for the stoves enhanced the risk; instructing them that if it did, the plaintiff could not recover, and if it did not, he could. In this we see nothing erroneous. Whether a risk has been increased or not, is a question for the jury, not the court: Grant *v.* How. Fire Ins. Co., 5 Hill 10. The representation, even though it be made a warranty, does not bind the assured that there shall be no alteration, however immaterial to the risk, in the thing insured, or in its use. Although a strict and literal compliance with the terms of warranties be necessary, still the warranty is construed according to its ordinary meaning: Shaw *v.* Roberts, 6 Ad. & Ellis 75. While the risk is running, the assured can make no substantial alteration which enhances the liability of the insurer. But what is a substantial alteration? In fire insurance it would seem to be, mainly, an increase of the risk: Stetson *v.* Ins. Co., 4 Mass. 330. It was one of the conditions of the policy on which this suit was brought, that any alterations or repairs made in or about the premises (insured) must be made at the risk of the insured; not that they should necessarily avoid the contract, but that the assured should assume the hazard of their increasing the liability of the insurer.

The only remaining assignment of error is founded upon what the court said in regard to a portion of the evidence. It was as follows:—" Evidence, however, was received of the conversation that occurred between the agent of the company and the plaintiff, at the time the application for insurance was made,

[Girard Fire and Marine Insurance Co. *v.* Stephenson.]

in which the latter said that he expected to be from home much of the time, and that the shop would be but little used, though he "might want to use it some, and that no fire would be in it." But this was not communicated to the officers of the company, though it was that the insurance would be in the farmer's class of hazard, by which the premium would be considerably less than if in another class, and could not, therefore, have served as an item of consideration in the taking of the risk. Had the officers been informed of the conversation, and it had formed to any extent an inducement to the risk, a different aspect might be given to the case. But even this might be questionable, as it would be outside of what was written and proved the basis of the contract between the parties."

Certainly, if this conversation was not communicated to the company, it could have had no influence in inducing them to enter into the contract. The agent did, however, inform the company that it was a farmer's risk, but he did not testify that the information was given in consequence of anything the plaintiff said. On the contrary, his testimony was, as appears by the judge's notes, that it was not on that account he made the communication. He testified:—"I communicated to the company it was a farmer's risk—*that there were no contiguous buildings*— but nothing of the conversation I had with the plaintiff."  *  * " The shop, without fire in it, would not exempt the house from farmer's rates, which do not allow other buildings within eighty feet." It was the distance of neighbouring buildings then, and not the fact that they have no fire in them, which determined whether the risk was a farmer's risk or not.

The plaintiffs in error, however, complain that the court expressed doubts whether, if the conversation had been communicated to the company, it would have made any difference, because it was outside of the written basis on which the parties contracted. If it could have had any effect in the supposed case, it would be, not because the declarations of the plaintiff were fraudulent concealment, or misrepresentation, but because they amounted to a promissory representation broken by him, a representation in addition to those contained in his written application. But, by the provisions of the policy itself, the addition of a parol promissory representation appears to be prohibited, and the rights of the parties made to depend upon the written contract alone. How this may be, it is unnecessary to inquire; for the question is not in this case. The supposed case has no existence here, nor was it submitted to the jury; and, consequently, any doubts expressed by the court below in regard to it, could not have been hurtful to the plaintiff in error.

None of the errors assigned are sustained, and the judgment is affirmed.

Judgment affirmed.