## Lebanon Co. *v.* Franklin Fire Ins. Co., Appellant.

*Insurance—Fire insurance—Increase of risk—Keeping of gasoline on premises—Repairs.*

1. A provision in a policy of fire insurance prohibiting the keeping or use of gasoline on the premises without the consent of the insurance company is not to be strictly construed; and if it appears that a fire occurred from the use of a gasoline torch in the burning off of old paint on the building insured, and not from any explosion of gasoline stored on the premises, the mere use of gasoline in the torch under such circumstances, is not sufficient to prevent a jury from returning a verdict in favor of the insured.

2. A provision in a policy of fire insurance that the working of carpenters, roofers, tinners, gas-fitters, plumbers, or other mechanics in building, altering or repairing the premises without permission of the company, will render the policy void, does not apply to such repairs as are necessary for the proper care and preservation of the property, and the question of what repairs are necessary for proper care and preservation, is one for the jury. In making the contract of insurance, the parties must be regarded as having had in contemplation the proper care and preservation of the premises insured.

Argued Feb. 13, 1912. Appeal, No. 328, Jan. T., 1912, by defendant, from judgment of C. P. Lebanon Co., Dec. T., 1909, No. 4, on verdict for plaintiff in case of Lebanon County v. Franklin Fire Insurance Company of Philadelphia. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before HENRY, P. J.

At the trial the defendant presented, among others, the following points:

2. The uncontradicted evidence in the case showing that the risk on the insured property was increased with the knowledge of the assured, during the continuance of said insurance, by the use of a painter's torch

in burning off the paint at the cornice of the insured building, from which the fire resulted, without the consent of the company to such increased hazard indorsed on said policy, this was a violation of an express condition of the policy, and there can be no recovery. Answer. Refused. (1)

3. The uncontradicted evidence in the case shows that the insured used, or permitted to be used on the insured premises, gasoline, benzine, spirit gas, or burning fluid, or some of them, to wit, gasoline, and did use and apply the same by means of a painter's torch in burning off the paint at the cornice of the insured building, without the consent of the company indorsed on the policy, which was such a violation of an express condition of the contract as avoids the policy, and the verdict of the jury must be for the defendant. Answer. Refused. (2)

5. The uncontradicted evidence in the case being that the assured used or permitted to be used, a painter's torch burning gasoline, to burn off the paint on the cornice of the insured building, from which the fire resulted, without the consent of the company indorsed on the policy, this was such a violation of the contract as avoided the policy, and your verdict must be for the defendant. Answer. Refused. (3)

Verdict and judgment for plaintiff for $6,276.02. Defendant appealed.

*Errors assigned,* among others, were (1-3) above instructions, quoting them.

*S. P. Light,* for appellant.—The county of Lebanon is not a mercantile, manufacturing, mechanical or domestic institution, and does not come within the purview of the suggestion of exemptions from the rule of law, then and now prevailing in Pennsylvania, of the late Mr. Justice GORDON, in Birmingham Fire Insurance Company v. Krœgher, 83 Pa. 64, which resulted

in the rulings in the cases of Mears v. Humboldt Fire
Insurance Co., 92 Pa. 15; Lancaster Silver Plate Co.
v. National Fire Insurance Co., 170 Pa. 151, and Lan-
caster Silver Plate Co. v. Manchester Fire Insurance
Co., 170 Pa. 166.

The error of the court in refusing binding instruc-
tions for the defendant, in this case, has been unanswer-
ably demonstrated and declared by the Supreme Court
of this State, in Heron v. Phoenix Mutual Fire Insur-
ance Co., 180 Pa. 257.

*Howard C. Shirk,* with him *Eugene D. Siegrist,* for
appellee.—The increase of hazard is a question of fact
for the jury: Perry County Insurance Co. v. Stewart, 19
Pa. 45; Franklin Fire Ins. Co. v. Gruver, 100 Pa. 266;
Grant v. Insurance Co., 5 Hill (N. Y.) 10; Smith v.
German Ins. Co., 30 L. R. A. 368.

The employment of mechanics and workmen and
the use by the plaintiff of a painter's gasoline torch in
making ordinary repairs necessary to the preservation
of the building, did not, as a matter of law, avoid the
policy.   The character of the repairs, and the pro-
priety of the method of making them were questions for
the jury, and properly submitted to it by the court
below: Dobson v. Sotheby, 1 Moody & Malk. 90; Far-
mers & Mechanics Ins. Co. v. Simmons, 30 Pa. 299;
Mears v. Ins. Co., 92 Pa. 15; Lancaster Silver Plate
Co. v. Fire Ins. Co., 170 Pa. 151; Citizens Ins. Co. v.
McLaughlin, 53 Pa. 485; Smith v. Ins. Co., 30 L. R. A.
368.

The plaintiff having had the legal right under the
policy to make such repairs as were necessary to the
preservation of the building, and to use such means
as were effective for that purpose, the court properly
submitted to the jury whether the plaintiff was grossly
negligent: Cumberland Valley Mutual Protection Co.
v. Douglas, 58 Pa. 419; Lebanon Mutual Ins. Co. v.

Kepler, 106 Pa. 28; Bentley v. Lumbermen's Ins. Co., 191 Pa. 276.

OPINION BY MR. JUSTICE POTTER, July 2, 1912:

In this action of assumpsit the county of Lebanon sought to recover from The Franklin Fire Insurance Company, under a policy insuring the court house in Lebanon, its proportionate amount of a loss by fire. The fact and the amount of the loss were not disputed. But the defendant denied liability on the ground that certain conditions of the policy had been violated. Upon the trial binding instructions for the defendant were refused by the trial court, and the case was submitted to the jury. The verdict was in favor of the plaintiff for $6,276.02. Motions for a new trial and for judgment non obstante veredicto were made by the defendant, but were overruled by the court below, and judgment was entered on the verdict. Defendant has appealed and contends that under the undisputed testimony there was nothing which the court should have properly submitted to the jury, and that binding instructions should have been given in favor of the defendant.

The defense was based upon certain conditions of the policy in suit, which it is claimed were violated. These were, "1. If the risk shall be increased from any cause whatever within the knowledge of the assured, during the continuance of the insurance, notice thereof shall be given to the company, and consent to such increased hazard be indorsed hereon, or this policy shall be of no force." "VIII. This company shall not be liable for loss ...... if the assured shall keep or use, or permit to be kept or used on the premises ......'. gasoline, .... without written consent in this policy, and if so kept or used on the premises by the assured, without consent indorsed hereon, this policy shall be void." "IX. The working of carpenters, roofers, tinsmiths, gas fitters, plumbers, or other mechanics,

in building, altering, or repairing the premises named in this policy, will void the policy, unless permission for such work be indorsed in writing hereon."

In its opinion on the motions for a new trial and judgment non obstante veredicto the court below states the following facts: "Immediately prior to the fire the commissioners had repaired the roof, placed a concrete floor in the corridor, replacing tiling which had become loosened and it was claimed dangerous, had done some plastering and papering, had taken out one radiator in the corridor, replaced wooden wainscoting with enameling, placed new doors with transoms in the corridor on first floor, plaintiff claiming the old doors were worn out, and made some other minor repairs. The cupola had been painted, the old paint having been burnt off with the painter's torch, using gasoline as fuel, and the main building was in course of preparation for painting at the time of the fire. The paint was being burnt off by the contractor, using a painter's gasoline torch. In the course of this work two slight fires had occurred in the cornice. The painters had stopped work shortly before the fire, which started at the place where they had been working on the cornice. The painter's torch, such as here used, was in general use for removing the paint on the exterior of the building and was admittedly the most practicably effective and satisfactory instrument and means to acccomplish this end. The woodwork was old and in some places decayed. The county commissioners presented evidence tending to show they had instructed the contractor that if, in the course of the work, he met with decayed wood it was to be marked off and repaired by the county commissioners."

Whether or not the risk was increased in any way by the work which was done, was under the authorities a question of fact for the jury. In Heron v. Ins. Co., 180 Pa. 257, 261, Chief Justice STERRETT said: "If the policy had contained only the clause relating to in-

creased 'hazard' above quoted, the case should have gone to the jury." In Girard Fire & Marine Ins. Co. v. Stephenson, 37 Pa. 293, 298, Mr. Justice STRONG said: "Whether a risk has been increased or not, is a question for the jury, not the court." The principle involved is broadly stated in 2 Cooley on Insurance, 1495, as follows: "It cannot be said, as a matter of law, that any particular change in the condition of the property insured, or the doing or omission of a particular act, increased the risk. What constitutes an increase of risk is essentially a question of fact."

It appears that in preparing for the work of repainting, the old paint was softened for taking off by the use of gasoline torches. It was shown that such a torch is operated by compressed air and sends out a flame some eighteen inches in length generated by gasoline contained in a chamber of the torch. The flame is directed against the paint until it softens. The torch is simply a tool which owes its efficiency to the heat it is able to supply to the purpose at hand. The fire for which recovery is here sought did not result from any explosion of the gasoline, but was caused apparently by the impact of the flame which was intended merely to burn off the paint. It is a matter of common knowledge that it is the peculiarly inflammable or explosive qualities of gasoline, which cause it to be justly regarded with suspicion, and make its use the subject of restriction in policies of insurance; but these qualities resulted in no injury in this case. The gasoline neither exploded nor took fire. The flame operated merely as it would from any outside source. It is contended, however, that the use of gasoline torches was a breach of the literal terms of the eighth condition of the policy, which prohibited the keeping or using of gasoline on the insured premises. The weight of authority is to the affect, however, that such provisions are not to be strictly construed. In considering a similar clause in a policy, in the case of Mears v. Hum-

boldt Fire Ins. Co., 92 Pa. 15, 20, this court said: "What is intended to be prohibited is the habitual use of such articles, not their exceptional use upon some emergency. The strict rule claimed. by defendant would prevent the insured from painting his house or cleaning his furniture, as it would be difficult to do either without using some of the prohibited articles." See also the discussion in the opinion in Lancaster Silver Plate Co. v. Fire Insurance Co., 170 Pa. 151, where, in construing a similar restriction in a policy, it was held proper to refuse to charge that there could be no recovery, if gasoline was used on the premises during the life of the policy.

The decision in Smith v. Ins. Co., 107 Mich. 270, presents a state of facts closely resembling those in the case at bar. In that case the insured building was a court house, and the fire occurred, as in this instance, while painters were burning off old paint with gasoline torches. In the opinion of the court in that case the authorities were collected and reviewed, and the right of the insured to recover was sustained. In First Congregational Church v. Ins. Co., 158 Mass. 475, a similar state of facts was also shown. There a naphtha torch was used to burn off old paint from a church building. The work had been in progress for a month, and was not completed when the fire occurred. It was held that it was a question for the jury whether such a use of naphtha was a reasonably safe and proper way of making repairs to the building, under the circumstances.

In the present case no gasoline was stored on the premises, and the only use of it, was of the small quantity contained in the painter's torch. As above suggested, the fire was not caused by the use of gasoline, as such, as it was merely the fuel which supplied the flame, and any fuel which would have produced a similar flame, would have brought about the same result. It was the negligent or accidental misuse of the

flame which caused the fire. We do not feel, therefore, that the use of gasoline in the manner shown can be said to be so clearly in violation of the terms of the policy in this respect as to have made it proper for the court to have so pronounced, as a matter of law. The question was, we think, for the jury.

So too with regard to the matter of repairs. The court left it to the jury to find whether or not the repairs made by the county commissioners were reasonably necessary for the preservation and maintenance of the building. He went into the matter in considerable detail, recalling to the jury one feature after another of the work which had been done, as shown by the evidence, and left them all for the consideration of the jury, for them to determine whether or not the work which was done, was reasonably necessary for the proper maintenance and preservation of the building. In all this we see no error. Counsel for appellant cites the case of Robb v. Ins. Co., 230 Pa. 44, as sustaining the contention that the policy became void by reason of the employment of mechanics upon the premises without the written consent of the insurer. But in that case there was a specific provision limiting the time of the employment of such mechanics, which was violated. In the present case the working of mechanics is prohibited in general terms, but such a provision has been quite generally held not to apply to such repairs as are necessary for the proper care and preservation of the property. The principle is thus set forth in 1 May on Insurance §240: "Working of carpenters: Repairs. Upon the same general principles, when, from the character of the building insured, and the use made of it, it is necessary to have workmen constantly engaged in repairing, in order to keep it in proper condition for the business done therein, the employment of such workmen is not a breach of the condition that 'working of carpenters,' etc., altering or repairing, will vitiate the policy." The same principle is recog-

nized in Flanders on Fire Insurance, 532, as follows: "It is not to be presumed, in the absence of any express agreement on the subject, that when the owner effects an insurance on his building he deprives himself of the right to use it in the common and ordinary mode, including the right to make all proper and reasonable repairs. These repairs, indeed, may be so extensive as to amount to an alteration, and in that case the question will be whether such alteration materially increased the risk; but the substitution of a new bulkhead for one that had become useless by decay is not an alteration; it is a repair, and not the less so because the old material is discarded, and a more durable material employed in its stead. The risk, therefore, arising from ordinary repairs is covered by a policy."

In making the contract of insurance the parties must be regarded as having had in contemplation the proper care and preservation of the premises insured.

We think the issues involved in this case were such as to require their submission to the jury, to be determined as questions of fact; and in the manner in which they were submitted, we see no error. The assignments of error are overruled, and the judgment is affirmed.